**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY,**
Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (SPECA),**
Respondent.

Commonwealth Court of Pennsylvania.

Argued March 4, 2003.
Decided April 14, 2003.

Charlene Stewart Bomaba, Philadelphia, for petitioner.

Stephen A. Sawyer, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY President Judge COLINS.

Southeastern Pennsylvania Transportation Authority (SEPTA) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed an order of a Worker's Compensation Judge (WCJ) that (1) granted Employer SEPTA's suspension petition in part, (2) denied SEPTA's termination petition, and (3) granted the reinstatement petition filed by Claimant Jerry Speca (Claimant).

The facts as found by the WCJ are summarized as follows. SEPTA employed Claimant as a transportation manager, or dispatcher. Finding of Fact No. 19. Sometime in 1996 SEPTA offered a voluntary retirement incentive package to employees. In July, 1996, Claimant submitted a benefit election form and separation agreement to SEPTA seeking to participate in the program effective August 1, 1996. Shortly after Claimant submitted those items, SEPTA notified Claimant

that, at that time, Claimant was not eligible for the incentive program. However, SEPTA also informed Claimant that he would be eligible for the program if he continued to work until July 1, 1997, and that the separation agreement he earlier executed would remain in effect unless he provided written notice to revoke the agreement before March 24, 1997. Finding of Fact No. 18.

While performing his duties for SEPTA on November 1, 1996, Claimant leaned back in his chair and fell backwards, hitting his neck, right shoulder, and right ankle on the floor. Finding of Fact No. 20. Claimant went to the hospital where he complained of pain in the areas of his body that hit the floor. He initially received medication for the injuries, and began seeing doctors and therapists. Claimant was provided therapy and exercises through March 10, 1997. Finding of Fact No. 21.

After Claimant returned to work on November 13, 1996, SEPTA submitted a Notice of Compensation Payable, which described Claimant's injury as "chair fell over with Claimant in it." SEPTA also presented an agreement to stop workers' compensation benefits, which agreement Claimant refused to sign. Findings of Fact Nos. 1 and 23.

Claimant continued to work in his old position. On March 10, 1997, he was discharged from Grandview Hospital, and continued with his job in a light-duty capacity. In April 1997, Claimant was hospitalized because of his diabetic condition, and never returned to his employment with SEPTA. Findings of Fact Nos. 24 and 25.

Claimant did not feel able to return to his old position, because of the stress, and because of the twisting required and its effect on moving his neck, shoulder, and arm. Finding of Fact No. 27. However,

Claimant did find another job in July 1997, working twenty to twenty-five hours per week for U.S. Air Express, as a bus driver. Finding of Fact No. 28. Claimant later obtained a different job, with similar weekly hours, working for Home Depot. Finding of Fact No. 29.

Claimant presented the deposition testimony of Dr. Randall N. Smith, M.D., who opined that Claimant sustained a cervical and low back syndrome and a shoulder injury caused by his work accident. Finding of Fact No. 17. SEPTA presented the deposition testimony of M. Barry Lipson, M.D., who opined that Claimant was not disabled as a result of his work accident. The WCJ found Claimant's expert more credible than SEPTA's, accepting Dr. Smith's entire testimony, and rejecting Dr. Lipson's insofar as it conflicted with Dr. Smith's.

Ultimately, the WCJ determined that, as of July 1, 1997, the date Claimant's retirement became effective, and ongoing, Claimant suffered a loss of earnings through no fault of his own, and that he did not remove himself from the work force on July 1, 1997, but he could not return to his pre-injury full-time job with SEPTA because of his work injury. Finding of Fact No. 38.

Of additional pertinence to this appeal are the WCJ's findings concerning Claimant's retirement package. The WCJ, after considering the testimony of one of SEPTA's benefits experts, and the language of SEPTA's pension plan, concluded that SEPTA was not entitled to an offset against worker's compensation benefits payable to reflect money Claimant receives through his pension plan. Finding of Fact No. 49.

SEPTA raises the following issues in its appeal: (1) Whether the WCJ erred in granting Claimant's reinstatement petition

because, SEPTA argues, the record indicates that Claimant discontinued working because of his voluntary retirement and not because of his work injury; (2) Whether the WCJ and the Board erred in their interpretation of SEPTA's pension plan amendment and the record by concluding that the pension plan negated Act 57's offset provision; (3) Whether the WCJ erred in rejecting an agreement between SEPTA and Claimant by which the parties agreed that SEPTA was entitled to an offset under Act 57 against worker's compensation benefits for pension benefits SEPTA paid Claimant; and (4) Whether the Board erred by not considering evidence SEPTA sought to introduce to the Board regarding the meaning of the pension plan offset provision, or not remanding the matter to the WCJ to allow SEPTA to submit the evidence, because, SEPTA argues, it could not have anticipated that the WCJ would have rejected the agreement between the parties regarding the offset provision of the pension plan.

### 1. Did the WCJ or Board err in granting Claimant's reinstatement petition when Claimant's actions indicate he intended to retire on July 1, 1997?

■ SEPTA argues that the WCJ and the Board erred in granting Claimant's reinstatement petition, and denying SEPTA's termination petition, because the record shows that, before Claimant was injured, he had intended to retire from SEPTA's employment. His ultimate retirement on July 1, 1997, SEPTA contends, did nothing but effectuate his pre-injury plans to retire. In fact, SEPTA points out, Claimant had originally sought to retire on July 1, 1996, before his injury occurred, and would have done so if he had been eligible at that time. Additionally, as noted above, Claimant had until March 1996 to revoke his separation agreement with employer, but never did so.

All of SEPTA's points regarding Claimant's original intention to retire are correct. Nevertheless, we are bound by our scope of review, which limits us to considering whether the WCJ's factual findings are supported by substantial evidence, whether an error of law was committed, and whether any constitutional rights were violated. 2 Pa.C.S. § 704. In this case, as noted by the Board, the WCJ found Claimant's medical witness's testimony more credible than SEPTA's. That witness testified that Claimant was disabled from returning to his job with SEPTA because of the injury he sustained on November 1, 1996. The WCJ rejected the testimony of SEPTA's expert to the extent that it contradicted Claimant's expert.

SEPTA relies upon the Supreme Court's decision in *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson)*, 543 Pa. 74, 669 A.2d 911 (1995) (*Henderson*), for the proposition that employees who voluntarily retire are not entitled to workers' compensation benefits. In *Henderson*, the Court held that

disability benefits must be suspended when a claimant voluntarily leaves the labor market upon retirement The mere possibility that a retired worker may, at some future time, seek employment does not transform a voluntary retirement from the labor market into a continuing compensable disability. An employer should not be required to show that a claimant has no intention of continuing work; such a burden would be prohibitive. For disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement **or** that he was

forced into retirement because of his work-related injury.

543 Pa. at 79, 669 A.2d at 913 (emphasis added).

In this case, the WCJ believed Claimant's testimony that his work injuries were one reason why he decided to retire. SEPTA would require the Court to **assume** that Claimant's intentions remained the same following his work injury——that he intended to remove himself from the labor market——when there is the possibility that he changed his mind about retiring, and would have continued working were it not for his injury. We can make no such assumption, as that would constitute impermissible fact finding.

Here, as noted by the Board, Claimant testified that he did not believe he could work on a full-time basis because of the physical movement his job required, and that his work injuries were a factor in his decision to retire. (Notes of Testimony, pp. 36–37, 74.) The competent testimony of Dr. Smith and Claimant's testimony as to why he retired constitute substantial evidence that supports the WCJ's factual findings and conclusion that Claimant is entitled to reinstatement of his benefits. Additionally, the WCJ's findings, reflecting Claimant's testimony that he obtained work following his retirement and that during a period of unemployment, he continued to look for work, support the conclusion that claimant did not intend to leave the labor market. Finding of Fact No. 28. The WCJ's factual findings support the conclusion that Claimant had not removed himself from the labor market because they show not only that Claimant was seeking employment following his retirement but also that his work injury was a factor in his retirement. Under *Henderson*, when a Claimant establishes either that he is seeking employment after retirement or that he was forced to retire because of a work injury, he is entitled to continue to receive compensation benefits.

SEPTA also relies upon this Court's decision in *Figured v. Workers' Compensation Appeal Board (USAir, Inc.)*, 702 A.2d 3 (Pa.Cmwlth.1997). In *Figured*, the claimant had been injured in February 1991, and his employer, USAir, accepted responsibility for the injury. The claimant accepted a retirement package at the end of 1992. In November 1992, USAir filed a termination petition averring the claimant had returned to work in March 1991. The claimant acknowledged his return to work but alleged that he had a residual impairment and asserted that a suspension was appropriate. The claimant then filed a reinstatement petition alleging that on or after January 1, 1993, his injury had returned and become disabling.

The WCJ in *Figured* reviewed the medical testimony of several experts, and found USAir's experts more credible than the claimant's expert. The WCJ determined that suspension was appropriate because USAir had failed to demonstrate that the claimant's disability had totally ceased. With regard to the claimant's reinstatement petition, the WCJ found claimant's testimony——that the major reason for his retirement was his work injury, and that he would have continued to work even in light of the incentive retirement package——not credible. Based upon that determination, the WCJ concluded that the claimant had "failed to sustain his burden of showing that his loss of earnings was caused by his work injury because Claimant voluntarily retired to take advantage of a lucrative retirement incentive." *Id.* at 5–6.

In concluding that the WCJ did not err in denying the claimant's reinstatement petition, the Court in *Figured* noted the Supreme Court's decision in *Henderson*. The Court looked to the WCJ's credibility determination concerning the lack of credi-

bility of the claimant's testimony. The Court also found significant the absence in the record of any indication that the claimant disclosed to USAir that he had physical reasons for his retirement, and the fact that the claimant sought no treatment for his back condition until four months after filing his reinstatement petition, and six months after alleging that his disability had recurred.

*Figured* is distinguishable from the present case in several respects. For example, in this case Claimant did light duty work following his injury up until April, 1997, when he left work because of his diabetes condition. Claimant also testified that his diabetes was under control at the time of his retirement. Additionally, the factual findings in this case indicate that Claimant has not removed himself from the labor market, as he obtained different work after retiring and continued to search for work when he became unemployed. In *Henderson*, as noted above, the Supreme Court held that a claimant seeking workers' compensation benefits will be entitled to benefits if he establishes the existence of one of two conditions— either that he is seeking employment after retirement or that he was forced into retirement. In this case Claimant established the existence of both conditions.

2. **Did the WCJ and the Board err in concluding that SEPTA's pension plan offset provision precluded SEPTA from seeking a credit against Claimant's worker's compensation benefits for pension payments made?**

■ The issue here presented is one of first impression. For the reasons that follow, we believe the WCJ and the Board erred in concluding that SEPTA's pension

plan precluded SEPTA from obtaining a credit for pension payments against the compensation benefits it owes Claimant. We begin with a discussion of Section 204 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, as amended by the Act of June 24, 1996, P.L. 350 (Act 57), 77 P.S. § 71(a). This section provides:

[T]he benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe **shall** also **be credited against the amount of the award** made under sections 108 and 306, except for benefits payable under section 306(c).

(Emphasis added.)

■ This section, which became effective on August 23, 1996, applies to injuries that occurred after that date. Because Claimant was injured on November 1, 1996, after the effective date of this provision, Section 204 is applicable to the issue before us. The plain language of this section directs that employers **shall** be entitled a credit against workers' compensation payments for benefits from an employer-funded pension plan. Neither the WCJ nor the Board offered any justification to support the conclusion that a private party's pension plan can preempt the application of Section 204. Thus, we believe the WCJ and the Board erred in concluding that Section 7.1(D)(4) of the pension plan amendment precludes SEPTA from obtaining an offset against its workers' compensation payments to Claimant for pension payments he receives from SEPTA.[1] Because of our conclusion regarding the Board's interpretation of Section 204 and the pension plan amendment, we need not address the remaining issues SEPTA raises. Accord-

---

1. We also believe that the WCJ and the Board misinterpreted Section 7.1(D)(4) of SEPTA pension plan which provides as follows:

*No Offset by Workers' Compensation.* In the case of any Member who is entitled to received Retirement Benefits under this Plan and who is also then, or at any time

ingly, the order of the Board is affirmed as to its conclusion that the WCJ did not err in granting Claimant's reinstatement petition. The Board's order is reversed and remanded to the Board with regard to its conclusion that SEPTA is not entitled to an offset credit for pension payments made to Claimant. The Board shall remand the case to the WCJ for computation in accordance with Section 204 of the Act.

### ORDER

AND NOW, this 14th day of April 2003, the order of the Workers' Compensation Appeal Board is affirmed with regard to the Board's decision affirming the order of the Workers' Compensation Judge granting Claimant's reinstatement petition. The Board's order is reversed and remanded with regard to its conclusion that SEPTA is not entitled to an offset credit for pension payments to Claimant. The Board is directed to remand this case to the WCJ to make a determination under Section 204 of the Act as to the amount of credit to which SEPTA is entitled and the amount of weekly compensation benefits SEPTA shall pay Claimant.

Jurisdiction is relinquished.

thereafter, contemporaneously receiving workers' compensation payments from the Employer or from its insurance carrier, **the amount of such [workers' compensation] payments shall not reduce the amount of Retirement Benefits** otherwise payable under this Plan to such member if an injury for which the workers' compensation is being paid was suffered on or after August 23, 1996.

(Emphasis added.) SEPTA's proffered interpretation of this section of the pension plan is correct. This provision does not direct that employer pension credits should be deducted from worker's compensation payments. Rather the language indicates that SEPTA will not be entitled to deduct money from an employee's **pension payments** to reflect worker's compensation payments SEPTA makes to the employee. The pension plan amendment's offset provision dictates simply that SEPTA cannot reduce **pension** payments to effect a credit for compensation benefits SEPTA pays an employee under the Act. That provision does not relinquish SEPTA's statutory right under Section 204 to receive a credit **to be deducted from workers' compensation payments** for pension payments the employer makes, as provided for under Section 204 of the Act.