Steve GILLIS, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (WILLITS ROOFING, INC.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 8, 1999.

Decided March 4, 1999.

258

Norman Weinstein, Philadelphia, for petitioner.

Valerie H. Lieberman, Philadelphia, for respondent.

Before DOYLE, J., PELLEGRINI, J., and McCLOSKEY, Senior Judge.

DOYLE, Judge.

Steve Gillis (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) which reversed in part and affirmed in part a decision of a Workers' Compensation Judge (WCJ) and granted Willits Roofing Company (Employer) an offsetting credit of $14,000 against an underpayment of benefits which it owed Claimant as the result of Employer's miscalculation of Claimant's average weekly wage. The sole remaining issue on appeal is whether Employer must pay Claimant the amount of the underpaid benefits from the date that Employer's doctor found that Claimant was no longer disabled until the date that the WCJ made that finding of fact in his opinion and order almost three years later.

Claimant sustained a work-related injury on November 12, 1990, when he fell off of a roof. Pursuant to the notice of compensation payable filed by Employer, Claimant began receiving weekly total disability benefits in the amount of $141.65, based upon an average weekly wage of $157.38.[1]

On August 10, 1992, Employer filed a petition to review medical treatment, as well as a petition to terminate benefits, averring that, as of June 11, 1992, Claimant had fully recovered from his work-related injury. Employer also requested a supersedeas.[2] Claimant filed a timely answer denying the allegations contained in the petition.

On November 23, 1991, Claimant filed a petition to review the notice of compensation payable, alleging that the average weekly wage contained in the notice of compensation payable was incorrectly calculated and that, by utilizing Claimant's last two completed quarters, following the provision of Section 309(e) of the Workers' Compensation Act[3] (Act), it would yield a higher average weekly wage. Employer filed a timely answer denying the allegations, and all the above petitions were consolidated for proceedings before a WCJ.

On February 10, 1995, the WCJ issued an order granting Employer's termination petition and ordering Claimant's benefits to be terminated as of June 11, 1992. The WCJ's order also granted Employer's petition to review medical treatment and determined that Claimant did not require medical treatment after June 11, 1992. In addition, the WCJ denied Claimant's petition to review the notice of compensation payable, concluding that the Claimant failed to satisfy his burden of establishing that his average weekly wage had been incorrectly calculated. Specifically, the WCJ rejected Claimant's calculation because Claimant had not worked the entire two quarters preceding his injury. Claimant appealed to the Board, arguing that the WCJ incorrectly granted Employer's petitions to terminate and to review medical treatment and also that the WCJ erred in denying Claimant's petition to review the notice of compensation payable.

1. We note that sixty-six percent of Claimant's average weekly wage of $157.38 would be $104.92. Although no explanation is given for this discrepancy, the issue of the proper calculation of Claimant's benefits is not before us.

2. On December 4, 1994, the WCJ denied Employer's request for supersedeas.

3. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §582(e).

The Board affirmed that part of the WCJ's decision which had granted Employer's termination petition; however, the Board concluded that there was no requirement that a claimant work during the entire two previous quarters to utilize the alternative calculation in Section 309(e). But the Board found that there was insufficient information available in the record to calculate correctly Claimant's average weekly wage and remanded the case back to the WCJ for that purpose.

On remand, the parties stipulated that Claimant had been underpaid. Employer argued that Claimant had been underpaid $100.59 per week during the entire period of his disability, and Claimant argued that he had been underpaid $197.02 per week during the same period. In addition, Claimant also argued that he should be reimbursed for the underpayment from the date of his injury, November 12, 1990, until the date when the WCJ circulated the termination order, February 10, 1995.

On May 23, 1997, the WCJ circulated his second order and directed Employer to reimburse Claimant for an underpayment of $100.59 per week for the period from November 12, 1990, to February 10, 1995, thus agreeing with Claimant's argument. In addition, the WCJ concluded that, although Claimant received benefits for approximately 139 weeks after the effective date of the WCJ's termination order on June 11, 1992, which totaled approximately $19,700 (139 weeks × $141.65 = $19,689.35), Employer was not entitled to a credit against future benefits for this "overpayment." Employer appealed to the Board.

On appeal to the Board, the Board concluded as follows:

> We believe the WCJ has made an error of law. Under certain limited circumstances the [Employer] is entitled to a

credit for overpayment of compensation. Where, as here, the [Employer] has paid compensation that is [not] due, a credit is permitted to prevent double recovery....

> In the instant case the WCJ determined that the overpayment to the Claimant was $19,700.00 and that the [Employer's] underpayment to the Claimant was $14,000.00. Under the circumstances, the [Employer] is entitled to a credit for the full $14,000.00 to prevent double recovery by the Claimant.[4]

(Board's decision at 3; Reproduced Record (R.R.) at 51a.) This appeal by Claimant followed.

On appeal,[5] Claimant argues that the Board erred in concluding that he was not entitled to reimbursement for Employer's underpayment of benefits between the effective date of the WCJ's termination, June 11, 1992, and the circulation date of the WCJ's order, February 10, 1995, and that the Board also erred in concluding that Employer was entitled to a credit for monies that it had paid to Claimant during that period.[6]

■ The law is well settled that an employer who is obligated to pay a claimant benefits can cease paying benefits if it satisfies any of the following conditions: (1) submits a supplemental agreement pursuant to Section 408 of the Act, 77 P.S. §732; (2) submits a final receipt signed by the claimant pursuant to Section 434 of the Act, 77 P.S. §1001; (3) secures an interlocutory order from a WCJ granting a discretionary supersedeas pursuant to Sections 413(a.1) and 413(a.2), 77 P.S. §774; (4) files a petition to suspend compensation with an accompanying affidavit from the insurer that the claimant has returned to work at wages greater than or equal to his pre-injury wage pursuant to Section 413(c) of the Act, 77 P.S. §774.2; or (5) secures a final order from a WCJ termi-

---

4. To be entitled to such a credit, an employer must establish that it has overpaid the Claimant, *i.e.*, not only paid the Claimant what he or she was owed but also paid an amount above that sum. *See Borda Construction v. Workmen's Compensation Appeal Board (Borda)*, 689 A.2d 1005 (Pa.Cmwlth.1997).

5. Our standard of review is limited to determining whether necessary findings of fact are sup-

ported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth.1996).

6. Claimant does not dispute the accuracy of the WCJ's calculation of his average weekly wage under Section 309(e).

nating a claimant's benefits. *Sheridan v. Workers' Compensation Appeal Board (Anzon, Inc.)*, 713 A.2d 182 (Pa.Cmwlth.1998). Until one of the above events occurs, an employer is under a continuing obligation to pay a Claimant the benefits properly owed to him. *Id.*

■ Furthermore, case law has firmly established that, if an employer files an application for a supersedeas, the supersedeas can be effective no earlier than the date on which the employer files such an application. *Horner v. C.S. Myers & Sons*, 721 A.2d 394 (Pa.Cmwlth.1998); *Cunningham v. Workmen's Compensation Appeal Board (Inglis House)*, 156 Pa.Cmwlth. 241, 627 A.2d 218 (1993); *Penn Window and Office Cleaning Co. v. Workmen's Compensation Appeal Board (Pearsall)*, 121 Pa.Cmwlth. 248, 550 A.2d 610 (1988), *petition for allowance of appeal denied*, 522 Pa. 607, 562 A.2d 829 (1989).

■ In the present case, Employer filed a termination petition on August 10, 1992, and accompanying that petition was a request for supersedeas which was denied by the WCJ on December 4, 1992. It is clear that, absent a supersedeas, an employer carries the burden of paying compensation during the entire litigation period. *Winkelmann v. Workmen's Compensation Appeal Board (Estate of O'Neill)*, 166 Pa.Cmwlth. 154, 646 A.2d 58 (1994), *petition for allowance of appeal denied*, 540 Pa. 609, 655 A.2d 996 (1995). Accordingly, the fact that a WCJ ultimately *retroactively* grants a petition to terminate benefits does not relieve Employer of the obligation to pay claimant disability benefits during the litigation period. *Graves v. Workmen's Compensation Appeal Board (LaFrance Corp.)*, 680 A.2d 49 (Pa.Cmwlth.1996). The litigation in this case which specifically involved the termination petition did not end until the WCJ issued his order granting Employer's petition on February 10, 1995. Therefore, even though the WCJ terminated

Claimant's benefits "retroactive" to June 11, 1992, the date of Employer's doctor's second examination, Employer was obligated to pay Claimant benefits during this entire time. *Winkelmann.* This obligation included paying the Claimant **the full amount** of benefits owed to him.

Employer concedes that, under our decision in *Borda Construction v. Workmen's Compensation Appeal Board (Borda)*, 689 A.2d 1005 (Pa.Cmwlth.1997), the Board erred in concluding that Employer was entitled to a credit against its underpayment for the amount that, as a result of the WCJ's termination order, it overpaid Claimant. Employer, however, argues that Claimant is not entitled to all of the money which the WCJ awarded to him. Specifically, Employer asserts that it is not obligated to reimburse Claimant for its underpayment during the period from June 11, 1992, when Employer's doctor concluded that he was no longer disabled, to February 10, 1995, when the WCJ made that ultimate finding, because, as the result of the WCJ's order, it was not obligated to pay **any** benefits during that time; logically, therefore, it should not be required to reimburse Claimant for any underpayment of benefits during that period of time.[7] We do not agree, however, because the Employer **was** obligated to pay benefits during that period of time and the flaw in Employer's syllogism is in its major premise that it was not obligated to pay **any** benefits during that period of time. Quite the contrary is true.

■ As noted above, although an employer files a termination petition, absent the granting of a supersedeas, it is obligated to pay a claimant benefits during the pendency of the petition. This obligation requires the employer to pay a claimant the **full** amount owed, not what the employer mistakenly believes it owes the claimant or even the amount it **later** is adjudicated to have owed

7. Employer argues that an affirmance is also proper based upon a theory of unjust enrichment because:

> There can be no more blatant example of unjust enrichment in allowing Claimant, who, because of a back-logged workers' compensation system, **received over $19,000 after the date of his full recovery**, to also be awarded an

additional $14,000 for that same period of time.

(Employer's Brief at 9.) (Emphasis in original.) We would note that it was Employer's initial error in calculating the Claimant's benefits which led to Employer underpaying Claimant's benefits during the pendency of the termination petition.

the claimant at that time. Specifically in the present case, but for Employer's incorrect calculation of Claimant's average weekly wage, Claimant would have received his full amount of weekly benefits, *i.e.*, $242.24 ($141.65 + $100.59). Accordingly, Employer was always obligated to pay Claimant his full rate of compensation, *i.e.*, the full amount to which Claimant was entitled, during the period that the termination petition was pending before the WCJ.

■ Although we conclude that Employer was obligated to pay Claimant his full rate of benefits from the date of his injury until it secured a termination order from the WCJ, contrary to Employer's assertion in its brief, Employer is not without a remedy. When an employer files a termination petition and, in conjunction with it, files an application for supersedeas which is subsequently denied, if the employer ultimately prevails on its termination petition, it is entitled to recoupment from the Supersedeas Fund for compensation paid but subsequently determined to not be owed. *Department of Labor and Industry v. Workmen's Compensation Appeal Board (Bethlehem Mines Corp.)*, 79 Pa. Cmwlth. 290, 469 A.2d 705 (1984). The triggering event for recoupment is the date on which the employer files the application for supersedeas.[8] *Pennsylvania Macaroni Co. v. Workmen's Compensation Appeal Board*, 36 Pa.Cmwlth. 267, 387 A.2d 949 (1978). Accordingly, Employer would appear to be enti-

tled to reimbursement from the Supersedeas Fund for all monies it owed and paid to Claimant from August 10, 1992, the date on which Employer filed its application for supersedeas through February 10, 1995, the date on which the WCJ issued his order granting the termination petition and removed from Employer the obligation to pay Claimant continuing benefits. Of course, it is up to Employer to seek affirmatively such reimbursement from the Supersedeas Fund.

Reversed.

## *ORDER*

**NOW**, March 4, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed, and Employer is ordered to pay the Claimant $242.24 per week for the period from November 12, 1990, the date of his injury, to February 10, 1995, the date of the Workers' Compensation Judge's termination of the Claimant's benefits. Employer is entitled to deduct from the monies owed all payments previously made to Claimant.

8. Section 413(a.1) of the Act, 77 P.S. §774, provides as follows:

The filing of a petition to terminate, suspend or modify a notice of compensation payable or a compensation agreement or award as provided in this section shall automatically operate as a request for a supersedeas to suspend the payment of compensation fixed in the agreement or the award where the petition alleges that the employe has fully recovered and is accompanied by an affidavit of a physician on a form prescribed by the department to that effect, which is based upon an examination made within twenty-one days of the filing of the petition.

This Section was amended by the Act of June 24, 1996 (commonly referred to as Act 57). Prior to its amendment in 1996, this Section provided for an automatic supersedeas upon the filing of a petition to terminate or modify compensation.