The BOEING COMPANY, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (HORAN), Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 24, 2009.

Decided June 24, 2009.

Reargument Denied Aug. 28, 2009.

Zachary M. Rubinich, Philadelphia, for petitioner.

Deborah J. Schwartz, Asst. Counsel, Harrisburg, for intervenor, Bureau of Workers' Compensation.

BEFORE: PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

The Boeing Company (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), which reversed a Workers' Compensation Judge's (WCJ) decision and order granting Employer's Application for Supersedeas Fund Reimbursement. At issue in this case is whether Employer meets the requirements of Section 443 of the Workers'

Compensation Act (Act)[1] to receive reimbursement from the Supersedeas Fund for overpayments of workers' compensation made to Thomas Horan (Claimant), which resulted from application of the offset/credit provisions of Section 204(a) of the Act, 77 P.S. § 71(a).[2]

The relevant facts in this case are as follows. Claimant sustained an injury to his low back while working as a material handler for Employer on February 4, 2004. Following his injury, Claimant was placed on light-duty status, and he was restricted to lifting 15 to 20 pounds. Claimant continued working on light-duty status, with no wage loss, from February 4, 2004 to December 23, 2004, when he was laid off. Claimant filed a Claim Petition seeking acknowledgment of his work-injury and payment of temporary total disability benefits as of December 24, 2004, and ongoing. Employer filed an Answer denying the allegations set forth in the Claim Petition.

The matter was assigned to a WCJ, who held several hearings at which the parties presented evidence in support of, and in opposition to, the Claim Petition. Of particular importance, during a hearing held before the WCJ on February 14, 2005, Claimant testified that, after being laid off, he received $419.00 per week in unemployment compensation benefits and 19 weeks worth of severance pay.[3] (WCJ Hr'g Tr. at 20–21, February 14, 2005.) Employer filed a brief with the WCJ, arguing, among other issues, that if Claimant's Claim Petition was granted, Employer should receive an offset credit for Claimant's severance pay and unemployment compensation benefits. (Employer's Br. to WCJ, July 14, 2005, at 5–6.) On October 18, 2005, the WCJ issued a decision and order granting Claimant's Claim Petition and directing Employer to pay Claimant temporary total disability benefits at the rate of $688.00 per week, commencing December 24, 2004 and continuing until otherwise modified,

1. Act of June 2, 1915, P.L. 736, added by the Act of February 8, 1972, P.L. 25, *as amended,* 77 P.S. § 999.

2. Section 204(a) of the Act provides as follows:

> (a) No agreement, composition, or release of damages made before the date of any injury shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth. The receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three hereof; and any release executed in consideration of such benefits shall be void: *Provided, however, That if the employe receives unemployment compensation benefits, such amount or amounts so received shall be credited as against the amount of the award made under the provisions of sections 108 and 306, except for benefits payable under section 306(c) or 307. Fifty per centum of the benefits commonly characterized as "old age" benefits under the Social Security Act*

> *(49 Stat. 620, 42 U.S.C. § 301 et seq.) shall also be credited against the amount of the payments made under sections 108 and 306, except for benefits payable under section 306(c): Provided, however, That the Social Security offset shall not apply if old age Social Security benefits were received prior to the compensable injury. The severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c).* The employe shall provide the insurer with proper authorization to secure the amount which the employe is receiving under the Social Security Act.
>
> 77 P.S. § 71(a) (emphasis added).

3. The other testimony and evidence presented at the hearings held before the WCJ on the Claim Petition is not at issue in the present matter and, therefore, such testimony and evidence will not be discussed herein.

plus interest for past due benefits. The WCJ also directed Employer to pay $4,335.00 in unreasonable contest attorney's fees. However, the WCJ did not acknowledge Employer's entitlement to any offsets/credits for the unemployment compensation and severance benefits received by Claimant.

Employer appealed the WCJ's decision and order, arguing, among other things,[4] that the WCJ erred in failing to award Employer offsets/credits for the unemployment compensation and severance benefits received by Claimant. In connection with its appeal, Employer filed a request for supersedeas. By order dated December 6, 2005, the Board granted Employer's request for supersedeas as to the award of unreasonable contest attorney's fees, but denied the request as to the award of temporary total disability benefits. As a result, Employer paid Claimant temporary total disability benefits and unreasonable contest attorney's fees totaling $29,861.47.[5] After considering Employer's appeal, the Board issued an opinion and order on August 22, 2006 affirming, but modifying, the WCJ's decision and order. In its opinion, the Board explained that Claimant had testified to receiving $419.00 per week in unemployment compensation benefits and 19 weeks of severance pay. (Board Op. at 5–6, August 22, 2006 (citing WCJ Hr'g Tr. at 20–21, February 14, 2005).) The Board concluded that, pursuant to Section 204(a) of the Act, Employer was entitled to offsets/credits for the unemployment compensation and severance benefits received by Claimant.

Employer subsequently filed its Application for Supersedeas Fund Reimbursement, seeking $29,861.47. The Bureau of Workers' Compensation (Bureau), acting as conservator of the Supersedeas Fund, challenged Employer's request. The matter was assigned to a WCJ, who conducted a hearing. The WCJ subsequently issued a decision and order granting Employer reimbursement from the Supersedeas Fund in the amount of 25,526.47. The WCJ found that Claimant received $10,894.00 ($419.00 for 26 weeks) in unemployment compensation benefits and $19,608.00 ($1,032.00 for 19 weeks) in severance benefits, which resulted in a total of $30,502.00. (WCJ Decision, Findings of Fact (FOF) ¶¶ 7, 10, October 1, 2007.) The WCJ further found that Employer had paid Claimant workers' compensation benefits and unreasonable contest attorney's fees totaling $29,861.47, which was the amount of reimbursement being sought by Employer. (FOF ¶ 10.) However, the WCJ found that Employer was not entitled to reimbursement from the Supersedeas Fund for the unreasonable contest attorney's fees because applicable case law does not allow for reimbursement of such fees, and because the Board had granted supersedeas as to the payment of those fees. (FOF ¶ 10.) Thus, the WCJ found that, after subtracting the $4,335.00 in unreasonable contest attorney's fees from $29,861.47, Employer was entitled to reimbursement from the Supersedeas Fund in the amount of $25,526.47. (FOF ¶ 11.)

■ The Bureau appealed the WCJ's decision and order, arguing that the WCJ erred in granting Employer Supersedeas Fund reimbursement for offsets/credits awarded under Section 204(a) of the Act. The Board subsequently issued an opinion

---

4. Employer also argued that the WCJ had erred in determining that Claimant was entitled to total disability benefits after he was laid off.

5. Employer paid $4,335.00 in unreasonable contest attorney's fees, despite being granted supersedeas with regard to the payment of those fees.

and order reversing the WCJ's decision and order. The Board, relying on *City of Wilkes–Barre v. Workers' Compensation Appeal Board (Spaide)*, 868 A.2d 620 (Pa. Cmwlth.2004), concluded that Employer is not entitled to reimbursement from the Supersedeas Fund. (Board Op. at 5–6, July 7, 2008.) Employer now petitions this Court for review of the Board's order.[6] The Bureau has intervened to oppose Employer's Petition for Review.

Before this Court, Employer argues that the Board erred in reversing the WCJ's decision and order granting Employer reimbursement from the Supersedeas Fund. Employer contends that it satisfied all of the requirements set forth in Section 443 of the Act governing the granting of reimbursement from the Supersedeas Fund. Employer asserts that the Board erred in relying on *Spaide* because that case is distinguishable from the present case. Employer contends that, unlike in *Spaide*,

here Claimant's entitlement to benefits was first established through the WCJ's decision and order. The WCJ granted the litigated Claim Petition and directed Employer to pay Claimant temporary total disability benefits, but failed to acknowledge Employer's entitlement to any offsets/credits pursuant to Section 204(a) of the Act. Employer argues that, under these circumstances, it could not engage in self-help to take automatic offsets/credits using the Bureau's regulations [7] because to do so would have violated the Act and subjected Employer to penalties. Employer further contends that, by the time the Board issued its determination concluding that the WCJ had erred in failing to award Employer offsets/credits for the unemployment compensation and severance benefits received by Claimant, Claimant had already returned to work and, thus, Employer could no longer collect its overpayment by making deductions from

---

**6.** "This Court's review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence." *Mark v. Workers' Compensation Appeal Board (McCurdy)*, 894 A.2d 229, 233 n. 6 (Pa.Cmwlth.2006) (en banc).

**7.** The Bureau's regulations at 34 Pa.Code § 123.4 provide for an automatic offset/credit. Specifically, 34 Pa.Code § 123.4 provides, in relevant part, as follows:

(a) After receipt of Form LIBC–756, the insurer may offset workers' compensation benefits by amounts received by the employee from any of the sources in § 123.3 (relating to employee report of benefits subject to offset). The offset of workers' compensation benefits only applies with respect to amounts of unemployment compensation, Social Security (old age), severance and pension benefits received subsequent to the work-related injury.
(1) The offset applies only to wage-loss benefits (as opposed to medical benefits, specific loss or survivor benefits).

(2) The offset for amounts received in Social Security (old age), severance and pension benefits only applies to individuals with claims for injuries suffered on or after June 24, 1996.
(3) The offset for amounts received in unemployment compensation benefits applies to all claims regardless of the date of injury.
(b) At least 20 days prior to taking the offset, the insurer shall notify the employe, on Form LIBC–761, "Notice of Workers' Compensation Benefit Offset," that the workers' compensation benefits will be offset. The notice shall indicate:
(1) The amount of the offset.
(2) The type of offset (that is—unemployment compensation, Social Security (old age), severance or pension).
(3) How the offset was calculated, with supporting documentation, which may include information provided by the employee.
(4) When the offset commences.
(5) The amount of any recoupment, if applicable.
34 Pa.Code § 123.4(a)-(b).

future payments of workers' compensation benefits.

In response, the Bureau argues that the Board acted properly in reversing the WCJ's decision and order granting Employer reimbursement from the Supersedeas Fund. The Bureau contends that *Spaide* is controlling in this case. According to the Bureau, under *Spaide*, Employer is not entitled to reimbursement from the Supersedeas Fund because the off-sets/credits that Employer was seeking are derived from Section 204(a) of the Act, and not Section 413, 77 P.S. § 771–774.3,[8] or Section 430, 77 P.S. § 971.[9] The Bureau asserts that, under *Spaide*, Employer is also not entitled to reimbursement because there was never a determination that compensation was not, in fact, payable. The Bureau further contends that there is nothing in Section 204(a) of the Act or the Bureau's regulations at 34 Pa. Code §§ 123.6[10] and 123.11[11] that prohib-

---

8. Section 413(a) of the Act provides, in pertinent part, that:

> A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed.

77 P.S. § 772. Section 413(a.1)-(a.2) further provides, in pertinent part, that:

> (1) The filing of a petition to terminate, suspend or modify a notice of compensation payable or a compensation agreement or award as provided in this section shall automatically operate as a request for supersedeas to suspend the payment of compensation fixed in the agreement or the award where the petition alleges that the employe has fully recovered and is accompanied by an affidavit of a physician on a form prescribed by the department to that effect, which is based upon an examination made within twenty-one days of the filing of the petition. A special supersedeas hearing before a workers' compensation judge shall be held within twenty-one days of the assignment of such petition....
>
> (2) In any other case, a petition to terminate, suspend or modify a compensation agreement or other payment arrangement or award as provided in this section shall not automatically operate as a supersedeas but may be designated as a request for a supersedeas, which may then be granted at the discretion of the workers' compensation judge hearing the case....

77 P.S. § 774(1)-(2).

9. Section 430 of the Act provides that:

> (a) The lien of any judgment entered upon any award shall not be divested by any appeal.
>
> (b) Any insurer or employer who terminates, decreases or refuses to make any payment provided for in the decision without filing a petition and being granted a supersedeas shall be subject to a penalty as provided in Section 435 [77 P.S. § 991], except in the case of payments terminated as provided in Section 434 [77 P.S. § 1001].

77 P.S. § 971.

10. The Bureau's regulations at 34 Pa.Code § 123.6 provide as follows:

> (a) Workers' compensation benefits otherwise payable shall be offset by the net amount an employe receives in UC benefits subsequent to the work-related injury. This offset applies only to UC benefits which an employe receives and which are attributable to the same time period in which an employe also receives workers' compensation benefits.
> (b) The offset may not apply to benefits for which an employe may be eligible, but is not receiving.
> (c) The offset to worker's compensation benefits for amounts received in UC benefits is triggered when an employe becomes eligible for and begins receiving the UC benefits.
> (1) When an employe receives UC benefits which the employe is later required to repay based upon a determination of ineligibility, the insurer may not offset the workers' compensation benefits.

ited Employer from utilizing the same mechanisms available to the insurer in *Spaide* to obtain the offsets/credits to which it is entitled.

We begin our review by considering the applicable law governing reimbursement from the Supersedeas Fund. The statutory provisions creating the Supersedeas Fund and allowing for reimbursement therefrom are found in Section 443 of the Act, which provides, in relevant part, as follows:

> (a) If, in any case in which a supersedeas has been requested and denied *under the provisions of section 413 or section 430,* payments of compensation are made as a result thereof and upon the final outcome of the proceedings, it is determined that such compensation was not, in fact, payable, the insurer who has made such payments shall be reimbursed therefor. . . .

> (b) There is hereby established a special fund in the State Treasury, separate and apart from all other public moneys or funds of this Commonwealth, to be known as the Workmen's Compensation Supersedeas Fund. The purpose of this fund shall be to provide moneys for payments pursuant to subsection (a). . . .

77 P.S. § 999 (emphasis added). Interpreting these statutory provisions, this Court has explained that reimbursement from the Supersedeas Fund will be granted where the following requirements are satisfied:

> 1) a supersedeas was requested; 2) the request for supersedeas was denied; 3) *the request was made in a proceeding under Section 413 or Section 430 of the Act;* 4) payments were continued because of the order denying supersedeas; and 5) in the final outcome of the proceedings, it was determined such compensation was not, in fact, payable.

*Mark v. Workers' Compensation Appeal Board (McCurdy),* 894 A.2d 229, 233 (Pa.

---

(2) When an employe's workers' compensation benefits have been offset by the amount received in UC benefits, and the employe is required to repay UC benefits based upon a determination of ineligibility, the insurer shall repay the employe for the amounts previously offset from the workers' compensation benefits. The employe may request that the insurer remit repayment directly to the Bureau of Unemployment Compensation Benefits and Allowances (BUCBA).

(d) When an employe receives a lump-sum award from BUCBA, the insurer may offset the amount received by the employe against future payments of workers' compensation benefits. The amount received by the employee shall be divided by the weekly workers' compensation rate. The result shall be the number of weeks, and fraction thereof, the insurer is entitled to offset against future payments of workers' compensation benefits.

34 Pa.Code § 123.6.

**11.** The Bureau's regulations at 34 Pa.Code § 123.11 provide as follows:

(a) Workers' compensation benefits otherwise payable shall be offset by amounts an employe receives in severance benefits subsequent to the work-related injury. The offset may not apply to severance benefits to which an employe may be entitled, but is not receiving.

(b) The net amount of any severance benefits shall offset workers' compensation benefits on a weekly basis except as provided in subsections (c) and (d).

(c) When the employe receives severance benefits in a lump-sum payment, the net amount received by the employe shall be divided by the weekly workers' compensation rate. The result is the number of weeks, and fraction thereof, the insurer may offset against future payments of workers' compensation benefits.

(d) When an employee receives a severance benefit in the form of tangible property, the market value of the property, as determined for Federal tax purposes, shall be divided by the weekly workers' compensation rate. The result is the number of weeks, and fraction thereof, the insurer may offset against further payments of workers' compensation benefits.

34 Pa.Code § 123.11.

Cmwlth.2006) (en banc) (emphasis added) (footnotes omitted).

There is no question, in the present case, that Employer requested a supersedeas and that the request for supersedeas was denied. There is also no question that, as a result of the request for supersedeas being denied, Employer continued paying temporary total disability benefits to Claimant in accordance with the WCJ's decision and order granting Claimant's Claim Petition. Thus, what remains at issue in this case is whether Employer's request for supersedeas was made in a proceeding under Section 413 or Section 430 of the Act, and whether there was a determination that the workers' compensation benefit payments made to Claimant were not, in fact, payable.

 We turn first to the issue of whether Employer's request for supersedeas was made in a proceeding under Section 413 or Section 430 of the Act. The Board determined, and now the Bureau argues, that this Court's prior decision in *Spaide* is controlling as to this issue. Employer counters that *Spaide* is distinguishable from the present case and, therefore, is not controlling.

In *Spaide*, the employer acknowledged liability for the claimant's injury and was paying workers' compensation benefits to the claimant pursuant to a notice of temporary compensation payable (NTCP), which later converted to a notice of compensation payable (NCP). *Spaide*, 868 A.2d at 621. The employer subsequently filed a petition to review compensation benefit offset, seeking to establish its entitlement to an offset/credit for pension benefits that the claimant began receiving after he retired. *Id.* A WCJ determined that the employer was entitled to an offset/credit to the extent that it funded the pension benefits received by the claimant, and the employer requested reimbursement from the Super-

sedeas Fund for the overpayments that it had made to the claimant as a result of the offset/credit. *Id.* A second WCJ granted the employer reimbursement from the Supersedeas Fund, but the Bureau appealed to the Board, which reversed. *Id.* at 622. The employer petitioned this Court for review.

Before this Court, the employer argued that it had requested supersedeas in a proceeding under Section 413 of the Act. In addressing the employer's argument, this Court relied on its prior decision in *Department of Labor & Industry, Bureau of Workers' Compensation v. Workers' Compensation Appeal Board (Exel Logistics)*, 827 A.2d 529 (Pa.Cmwlth.2003), *affirmed by*, 586 Pa. 85, 890 A.2d 1045 (2005).

In *Exel*, the employer, who had been paying the claimant pursuant to an NCP, filed a petition for forfeiture pursuant to Section 306(f.1)(8) of the Act, alleging that the claimant had refused reasonable medical treatment. *Exel*, 827 A.2d at 530. The employer also requested a supersedeas while its petition for forfeiture was pending before a WCJ. *Id.* The WCJ denied the request for supersedeas, which, in turn, caused the employer to continue paying benefits to the claimant. *Id.* When the WCJ subsequently granted the employer's petition for forfeiture, the employer sought reimbursement from the Supersedeas Fund. *Id.* The WCJ denied the employer Supersedeas Fund reimbursement, the employer appealed to the Board, and the Board reversed. *Id.* at 530–31. The Bureau then petitioned this Court for review, arguing that the Board had erred in awarding the employer Supersedeas Fund reimbursement because the employer had only filed a petition for forfeiture pursuant to Section 306(f.1)(8) of the Act. *Id.* at 531. The employer countered by arguing that it had made its request in a proceeding un-

der Section 413 of the Act, attempting to equate its petition for forfeiture to a suspension petition. *Id.* at 531 n. 6. Addressing these arguments, this Court stated:

In this case, Employer filed a petition for forfeiture of compensation benefits pursuant to Section 306(f.1)(8) because Claimant refused to undergo reasonable medical treatment. Section 306(f.1)(8) provides that an employee who refuses reasonable medical treatment shall forfeit all rights to compensation for any injury or increase in his incapacity shown to have resulted from such refusal. Under this provision, an employee's forfeiture of benefits is not based upon his ineligibility to receive benefits or an obligation to pay benefits due to a change in the claimant's disability or status like a termination, suspension or modification petition filed pursuant to Section 413 of the Act, but instead, seeks only to penalize the employee for his failure to accept reasonable treatment in an effort to aid in the recovery of his work-related injury.

Because neither Section 306(f.1)(8) of the Act nor Section 443 of the Act provides for supersedeas fund reimbursement to an employer who succeeds on a petition for forfeiture filed pursuant to Section 306(f.1)(8) of the Act, the Board erred in granting Employer's request for supersedeas fund reimbursement. Accordingly, the order of the . . . Board is reversed and the decision of the WCJ is reinstated.

*Id.* at 532–33.

Applying the same reasoning used in *Exel,* this Court, in *Spaide,* rejected the employer's argument that it made a request for supersedeas in a proceeding under Section 413 of the Act. Specifically, the Court explained:

We recognized in *Exel* that although Section 306(f.1)(8) provides a specific remedy against a claimant who refuses reasonable medical treatment, it does not provide for supersedeas fund reimbursement. Like Section 306(f.1)(8), Section 204(a), applicable here, provides a specific remedy in those cases where the claimant is receiving both pension benefits funded by the employer and workers' compensation benefits. It does not provide for supersedeas fund reimbursement.

Employer contends that because it filed a petition to review compensation utilizing Bureau Form LIBC–378, which specifically allows Employer to seek a credit for pension benefits, its request for supersedeas was necessarily filed pursuant to Section 413(a)(2) of the Act, 77 P.S. § 774(2). Employer further argues that its credit was based on a change in Claimant's status, *i.e.,* his receipt of pension benefits.

We disagree. In essence, Employer's position is elevating form over substance. A review of Bureau Form LIBC–378 reveals that a party may utilize LIBC–378 to seek relief under other provisions of the Act in addition to relief sought under Section 413. Form LIBC–378 may be used to seek approval by the WCJ of a compromise and release; however, the WCJ's authority to approve a compromise and release is found in Section 449 of the Act, 77 P.S. § 1000.5. Similarly, an employer's right to a credit against compensation paid is not authorized by Section 413; it is found in Section 204(a) of the Act.

*Spaide,* 868 A.2d at 623 (citations and footnotes omitted).

After carefully reviewing *Spaide,* and the authority relied on therein, we agree with Employer that *Spaide* is distinguishable from the present case. *Spaide* involved a request for supersedeas pursuant to Section 413. Unlike in *Spaide,* Employ-

er here is asserting that it filed a request for supersedeas in a proceeding under Section 430 of the Act, and not Section 413. In *Spaide* and *Exel*, this Court considered the issues of whether petitions filed pursuant to Section 306(f.1)(8) and Section 204(a) of the Act could be equated with petitions to suspend, modify, or terminate benefits filed pursuant to Section 413 of the Act. Here, however, Employer sought supersedeas under the provisions of Section 430 and it is, therefore, irrelevant that the offsets/credits sought by Employer are derived from Section 204(a), and not Section 413. Section 430 of the Act allows an employer or insurer to request a supersedeas to suspend its obligation to pay workers' compensation benefits to a claimant pursuant to an order of a WCJ or the Board while that order is being appealed to the Board or this Court. *Mark*, 894 A.2d at 234–35. This is precisely what Employer did in this case. Employer requested a supersedeas in connection with its appeal of the WCJ's initial decision and order granting Claimant's Claim Petition. The purpose behind Employer requesting a supersedeas was to suspend Employer's recently established liability to pay Claimant workers' compensation benefits pending the outcome of the appeal that it filed with the Board. Therefore, we conclude that Employer's request for supersedeas was filed in a proceeding under Section 430.

■ The Bureau also argues that, similar to the insurer in *Spaide*, Employer had means available to take an offset against Claimant's benefits, but that Employer did not make use of these means. This Court, in *Spaide*, noted that "the Bureau's regula-

tions, 34 Pa.Code §§ 123.4–123.11, provide the mechanisms by which an employer may offset workers' compensation benefits [and that] Employer did not avail itself of the Bureau's procedures." *Id.* at 623 n. 9. This Court also explained that:

> If we adopted Employer's position, it essentially would be allowing Employer a double recovery because Employer's workers' compensation obligation is reduced on a monthly basis due to the pension offset. If Employer were now to receive reimbursement from the supersedeas fund, it would be recovering monies for which it is and has been receiving a credit against its workers' compensation obligation since December 2000.

*Id.* at 623. This reasoning does not apply to the present case. Here, Employer contested Claimant's injury from the beginning and, thus, there were no benefits being paid from which Employer could take automatic offsets/credits pursuant to the Bureau's regulations.[12] Further, after the WCJ issued the decision and order directing Employer to pay Claimant weekly benefits at the rate of $688.00 per week, commencing December 24, 2004 and continuing until otherwise modified, Employer could not, acting on its own, decrease the amount of Claimant's workers' compensation benefits to obtain the offsets/credits to which it was entitled. As correctly argued by Employer, if it had done so, it would have been subject to penalties under Section 435 of the Act, as provided for in Section 430. Even if penalties would not have ultimately been awarded, Employer had no way of knowing the same and, thus, Employer acted properly in following the Act. In addition, because Claimant re-

---

12. The dissenting opinion, which asserts that WCJs do not have jurisdiction to award offsets/credits in initial claim petition proceedings, is inconsistent with our opinions in *Costa v. Workers' Compensation Appeal Board* *(Carlisle Corp.)*, 958 A.2d 596 (Pa.Cmwlth. 2008), and *Toy v. Workmen's Compensation Appeal Board* *(Alltel Pa.)*, 651 A.2d 701 (Pa. Cmwlth.1994).

turned to work before Employer could begin taking the offsets/credits to which it is entitled, there is no threat of a double recovery for Employer in this case. In fact, without receiving any reimbursement from the Supersedeas Fund, Employer will not recover any amount of the offsets/credits to which it is entitled. Moreover, were this Court to adopt the Bureau's position on this issue, we would be advocating that Employer engage in self-help in the face of an order of a WCJ, a position antithetical to the previously expressed policy of this Court. *See, e.g., Robb, Leonard & Mulvihill v. Workers' Compensation Appeal Board (Hooper)*, 746 A.2d 1175, 1182 (Pa. Cmwlth.2000) ("The Act does not give the employer the right of self-help, i.e., the right to ignore the requirements of the Act and unilaterally suspend benefits without following the prescribed statutory remedies.").[13]

■ Having determined that Employer's request for supersedeas was filed in a proceeding under Section 430, we now turn to the issue of whether there was a determination that the workers' compensation benefits paid to Claimant as a result of its request for supersedeas being denied were not, in fact, payable. The Bureau again asserts that *Spaide* is controlling on this issue; however, we disagree with the Bureau that *Spaide* is controlling on this issue. In *Spaide*, this Court quoted *State Workers' Insurance Fund v. Workers' Compensation Appeal Board (Shaughnessy)*, 837 A.2d 697 (Pa.Cmwlth.2003), for the principle that the "purpose of the supersedeas fund is to provide a means to protect an insurer who makes compensation payments *to a claimant who ultimately is determined not to be entitled thereto.*" *Spaide*, 868 A.2d at 623 (quoting *Shaughnessy*, 837 A.2d at 702). Applying this principle, this Court, in *Spaide*, concluded that despite Employer's right to an offset, Claimant was still entitled to workers' compensation benefits:

> In this case, there is no determination that Claimant should never have received any compensation. Absent the pension offset, Claimant would continue to receive his weekly compensation benefits. As the Board aptly noted, the amount of workers' compensation benefits to which Claimant is entitled remains unchanged inasmuch as Employer has not sought to modify, suspend or terminate its obligation under the Act.

*Spaide*, 868 A.2d at 623–24. This application of *Shaughnessy*, however, does not relate to the central issue presented in *Spaide* of whether the Employer's request for supersedeas was made pursuant to Section 413. This Court's interpretation of *Shaughnessy* in *Spaide* was not essential

---

13. In *Robb*, this Court went on to state:
the law is well settled that an Employer who is obligated to pay a claimant benefits may cease paying such benefits only when one of the following conditions is satisfied:
(1) a supplemental agreement is submitted pursuant to Section 408 of the Act, 77 P.S. § 732;
(2) a final receipt is submitted, signed by the claimant pursuant to Section 434 of the Act, 77 P.S. § 1001;
(3) an interlocutory order is secured from a WCJ granting a discretionary supersedeas pursuant to Section 413(a.1) and 413(a.2) of the Act, 77 P.S. § 774;
(4) a petition to suspend compensation is filed with an accompanying affidavit from the insurer that the claimant has returned to work at wages greater than or equal to his pre-injury wage pursuant to Section 413(c) of the Act, 77 P.S. § 774.2; or
(5) a final order is secured from a WCJ terminating a claimant's benefits.
*Gillis v. Workers' Compensation Appeal Board (Willits Roofing, Inc.)*, 725 A.2d 257 (Pa.Cmwlth.1999)....
*Robb*, 746 A.2d at 1182.

to *Spaide's* outcome and was, therefore, dicta. Moreover, this application conflated the concept of the workers' compensation benefits to which the claimant was entitled with the concept of the *payment* of those benefits to which he was entitled. While, as this Court in *Spaide* pointed out, an employer's right to an offset does not diminish the total amount of compensation to which a claimant is entitled, it does reduce the amount of the payments that the claimant is entitled to receive from the employer. As this Court stated in *Shaughnessy,* the purpose of the Supersedeas Fund is "to protect an insurer who makes compensation *payments* to a claimant who ultimately is determined not to be entitled" to those payments. *Shaughnessy,* 837 A.2d at 702 (emphasis added) (emphasis omitted).

In *Shaughnessy,* an employee died due to chemical exposure while working for the employer, and the deceased employee's widow filed a fatal claim petition. *Shaughnessy,* 837 A.2d at 698. The State Workers' Insurance Fund (SWIF) defended against the fatal claim petition. *Id.* A WCJ granted the fatal claim petition, and SWIF was required to pay benefits to the deceased employee's widow. *Id.* After SWIF appealed, the Board remanded the matter for a determination as to whether the employer had workers' compensation coverage. *Id.* Following further proceedings, the parties stipulated that SWIF was not the workers' compensation carrier for the employer during the last period of exposure. *Id.* at 699. The parties also stipulated that the fatal claim petition should be denied and that SWIF would not seek reimbursement from the deceased employee's widow. *Id.* Based on the stipulation entered into by the parties, the WCJ denied the fatal claim petition. *Id.* SWIF subsequently sought reimbursement from the Supersedeas Fund, and the Bureau opposed SWIF obtaining reimbursement.

*Id.* A WCJ denied SWIF reimbursement, and SWIF appealed. After further proceedings, the Board ultimately affirmed the WCJ's decision and order denying SWIF reimbursement. *Id.* SWIF petitioned this Court for review, arguing that the Board and the WCJ had erred in concluding that SWIF was not entitled to reimbursement from the Supersedeas Fund. *Id.* at 700. In addressing this argument, this Court stated:

SWIF was wrongfully told to pay Claimant benefits despite evidence that it was not the insurer. SWIF dutifully paid these benefits and now seeks to have this wrong corrected. Supersedeas Fund reimbursement is only appropriate, however, when it is "determined that such compensation was not, in fact, payable." "[T]he purpose of the supersedeas fund is to provide a means to protect an insurer who makes compensation payments to a claimant who ultimately is determined not to be entitled thereto." That is not what happened in this case. Rather, it was determined, by Stipulation that SWIF should not have paid compensation to Claimant, not that Claimant should never have received any compensation. As such, reimbursement from the Supersedeas Fund is not appropriate. Rather, we believe that the appropriate remedy is for SWIF to file a Review Petition, seek to have Employer joined by filing a Joinder Petition and ask a WCJ to hold Employer responsible for the payment of Claimant's compensation benefits and correct the wrong that was started with the first WCJ. Since SWIF has already paid Claimant's benefits, the WCJ could order Employer to reimburse SWIF, thus putting SWIF back into the same financial position it would have been had the first WCJ not wrongfully ordered it to pay benefits.

*Id.* at 702–03 (citations omitted) (emphasis omitted) (footnote omitted).

The present case is distinguishable from *Shaughnessy.* In *Shaughnessy,* we concluded that there was no determination that the benefit payments made to the claimant were not, in fact, payable because there was an error as to who was responsible for the claimant's workers' compensation benefit payments as between SWIF and the employer; this Court did not conclude that the claimant in *Shaughnessy* received payments to which she was not entitled. However, here there was a determination by the Board that Employer made overpayments of workers' compensation benefits to Claimant. That is, the Board determined that the Claimant was not entitled to all of the workers' compensation benefit payments he received pursuant to the WCJ's original award because of Employer's entitlement to offsets/credits for the unemployment compensation and severance benefits received by Claimant. The Board's determination effectively lowered the amount of workers' compensation benefit payments to which Claimant was entitled based on the fact that Claimant had already received compensation for his lost wages through other means. In addition, due to the fact that Claimant returned to work before Employer could obtain its offsets/credits, Employer's only remedy to recover the overpayments that it made to Claimant is through the Supersedeas Fund.

Ultimately, we agree with Employer that all of the requirements for obtaining Supersedeas Fund reimbursement set forth in Section 443 of the Act were satisfied. Therefore, we conclude that the Board erred in reversing the WCJ's decision and order granting Employer reimbursement from the Supersedeas Fund.

Accordingly, the Board's order is reversed.

### ORDER

**NOW,** June 24, 2009, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby **REVERSED.**

DISSENTING OPINION BY Judge PELLEGRINI.

The issue on appeal is whether the Boeing Company (Employer) met all of the requirements necessary for reimbursement from the Supersedeas Fund under Section 443(a) of the Workers' Compensation Act (Act) [1] after making overpayments to one of its employees, Thomas Horan (Claimant). The overpayments resulted because the offset was not allowed against the compensation that it was required to pay for the amount of unemployment compensation benefits and severance pay that Claimant received after his departure from his employment. Reversing the Board, the majority finds that the Employer is making a claim for "compensation" that was not payable. I disagree with the majority because (1) the WCJ did not have jurisdiction to award and offset benefits and (2) even if he did, an "offset" is not "compensation" as used in Section 443(a) of the Act.

To recap the facts, Claimant was injured in 2004, returned to light-duty work and was ultimately laid off. After being laid off, he received unemployment compensation and severance pay. He filed a claim petition alleging a work injury, which Employer denied. Employer argued that it

---

1. Act of June 2, 1915, P.L. 736, added by the Act of February 8, 1972, P.L. 25, *as amended,* 77 P.S. § 999.

was entitled to an offset/credit for Claimant's unemployment compensation and severance pay. The WCJ granted Claimant benefits but failed to mention Employer's request for an offset in her decision. Employer appealed the WCJ's decision raising, *inter alia*, the offset issue and filing a request for supersedeas. The Board granted supersedeas as to attorney fees but denied supersedeas in all other respects. Later, in the underlying case, the Board affirmed the grant of Claimant's benefits but modified the WCJ's decision after concluding that pursuant to Section 204(a) of the Act, 77 P.S. § 71(a),[2] Employer was entitled to an offset/credit for the unemployment compensation and severance benefits Claimant had received. This decision was not appealed.

Employer then filed its application for Supersedeas Fund Reimbursement, and the WCJ granted the application over opposition of the Bureau of Workers' Compensation (Bureau). The WCJ ordered that the Supersedeas Fund reimburse Employer $25,526.47, the amount Claimant received in unemployment compensation and severance benefits. The Bureau appealed the WCJ's decision to the Board under Section 204(a) of the Act. Agreeing with the Bureau, the Board reversed the WCJ's decision reasoning that offset benefits were not subject to supersedeas because "Section 204(a) provided a specific remedy in cases where the claimant was receiving workers' compensation and other funded benefits, not in reimbursement from the Supersedeas Fund." (Reproduced Record at 117A.) Reversing the Board, the majority finds that by not allowing the offset, "[t]he Board's determination effectively lowered the amount of workers' compensation benefit payments to which Claimant was entitled based on the fact that Claimant had already received compensation for his lost wages through other means."

First, I disagree with the majority because reimbursement from the Supersedeas Fund is not available for offset benefits not recognized in a claim petition because the WCJ does not have jurisdiction to award or not award in that type of a proceeding. The Bureau's regulations implementing Section 204(a) of the Act are contained at 34 Pa.Code §§ 123.4–123.111. 34 Pa.Code § 123.4 addresses how an employer can obtain an automatic offset. It provides that an employer is entitled to an automatic offset if it receives Form LIBC–756 from a claimant that he or she is receiving benefits subject to offset or the employer takes it upon itself to file Form LIBC–761a because a claimant is receiving benefits subject to offset. To challenge an offset, the claimant must file a petition to review the benefit offset with the Department of Labor and Industry. Simply put, all that an employer has to do is receive or file a form to receive an offset and then it is up to the claimant to challenge the

---

2. Section 204(a) of the Act provides, in relevant part:

[I]f the employe receives unemployment compensation benefits, such amount or amounts so received shall be credited as against the amount of the award made under the provisions of sections 108 and 306, except for benefits characterized as "old age" benefits under the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 et seq.) shall also be credited against the amount of the payments made under sections 108 and 306, except for benefits payable under section 306(c): Provided, however, That the Social Security offset shall not apply if old age Social Security benefits were received prior to the compensable injury. The severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c).

offset. In this case, once the award was entered, it was incumbent on Employer to file Form LIBC–761a which would have entitled it to an automatic offset but it failed to do so.

Because the only way a WCJ has jurisdiction over an offset claim is when a claimant files a petition for review challenging an employer's automatic offset, a WCJ does not have jurisdiction to hear whether an offset should be awarded in a proceeding to establish initial benefits. Correspondingly, if the WCJ does not have jurisdiction over offset claims in a claim petition, then an employer cannot avail itself of reimbursement from the Supersedeas Fund. *See City of Wilkes–Barre v. Workers' Compensation Appeal Board (Spaide)*, 868 A.2d 620 (Pa.Cmwlth.2005), where an employer was not entitled to an offset because 34 Pa.Code §§ 123.4–123.111 provided the mechanisms by which an employer could offset workers' compensation benefits, and we held that an employer was not subject to supersedeas fund reimbursement because an "Employer did not avail itself of the Bureau's procedures." *Id.* at 623.

Even if the WCJ has jurisdiction, I also disagree with the majority that an offset is not "compensation that was not, in fact, payable" as used in Section 443(a) of the Workers' Compensation Act. "Compensation" as used in Section 443(a) of the Workers' Compensation Act allows for reimbursement from the Supersedeas Fund for benefits that a claimant receives, not offsets that an employer can receive if it files the correct forms. Section 443(a) provides, in relevant part, that:

> If, in any case in which a supersedeas has been requested and denied under the provisions of section 413 or section 430, payments of compensation are made as a result thereof and upon the final outcome of the proceedings, it is determined that such **compensation**

was not, in fact, payable, the insurer who has made such payments shall be reimbursed therefore. (Emphasis added.)

The Act itself does not define "compensation" but as that term is used statutorily and in workers' compensation cases, it has required employers to pay claimants' medical payments and wage losses for injuries sustained in the course of their employment. *See, e.g.,* 77 P.S. § 511, 513 (schedules of compensation). Nowhere in the Act or our case law does it state that compensation encompasses offsets/credits and an employer is required to pay offsets/credits as part of a claimant's compensation. If offset/credits are not "compensation," then they cannot be sought as part of a supersedeas request. This is supported by the fact that employer contributions to the Supersedeas Fund are based on both disability and medical compensation that have been paid out, not on anything else. That is why other costs, such as interest, attorney fees and litigation costs are also not recoverable from the Supersedeas Fund. *See Universal AM–CAN, Ltd. v. Workers' Compensation Appeal Board,* 870 A.2d 961 (Pa.Cmwlth. 2005). By allowing an employer to take a credit say, for pensions, would require other employers who do not have that offset available to it to pay for other employers' benefit policies.

Because the WCJ does not have jurisdiction in a claim petition to award offsets and the term "compensation" as used in Section 443(a) does not include offsets/credits, Employer could not meet the last requirement for reimbursement to be granted from the Supersedeas Fund. For this reason, I would affirm the Board and respectfully dissent.