# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Consolidation Coal Company and East Coast Risk Management, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 1569 C.D. 2015 |
| | : | |
| Workers' Compensation Appeal Board (Albani), | : | |
| Respondent | : | |
| | : | |
| Donald R. Albani, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1681 C.D. 2015 |
| | : | Submitted: April 15, 2016 |
| Workers' Compensation Appeal Board (Consolidation Coal Company and East Coast Risk Management), | : | |
| Respondents | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE COHN JUBELIRER              FILED: September 13, 2016

Consolidation Coal Company and East Coast Risk Management (together, Employer) petition for review of two Orders of the Workers' Compensation Appeal Board (Board) dated April 2, 2013 and July 29, 2015, respectively. Donald

R. Albani (Claimant) cross-petitions for review of the Board's July 29, 2015 Order.[1] The April 2, 2013 Order under review concludes that Employer may offset Claimant's workers' compensation benefits to recoup overpayments made to Claimant resulting from Employer paying part of Claimant's pension. The Board concluded that, under the facts, Employer must recoup overpayments from the Supersedeas Fund instead of through offsets and remanded the matter to the WCJ to calculate retrospective credit. The April 2, 2013 Order also reversed the WCJ decision to deny Claimant's Penalty Petition and remanded the matter to the WCJ to reconsider penalties and unreasonable contest attorney's fees in light of the Board's conclusions. The July 29, 2015 Order under review affirmed the WCJ's subsequent decision awarding a 50 percent penalty and calculating the retrospective credit to which Employer is entitled. On appeal, Employer argues that the Board erred by concluding that Employer may not recoup overpayments directly from Claimant through offsets. Employer also argues that the Board erred in affirming the WCJ's decision to award Claimant a 50 percent penalty and unreasonable contest attorney's fees. In his Cross-Petition for Review, Claimant argues that the Board erred by affirming the WCJ's computation of penalties and unreasonable contest attorney's fees. For the reasons that follow, we affirm in part and reverse in part.

## I.    BACKGROUND

This case has a long and circuitous procedural history. Because each step in the litigation process is relevant to our disposition, we will recount this history in

---

[1] By Order of November 17, 2015, this Court consolidated the Cross-Petitions for Review and designated Employer as the Petitioner. (R.R. at 143a.)

detail. Claimant sustained a work-related injury on January 31, 2002 and has not returned to work since. (WCJ Decision, Sept. 29, 2005, Findings of Fact (2005 FOF) ¶¶ 5(b)-(c), R.R. at 4a.) Claimant applied for, and was awarded, a disability pension in February of 2003, which was made retroactive to February 1, 2002. (Id. at ¶¶ 5(c)-(d), R.R. at 4a.)[2] Claimant began receiving partial workers' compensation benefits pursuant to a WCJ's award dated June 8, 2004. (Board Op., Apr. 2, 2013, at 2 (2013 Board Op.), R.R. at 85a.) The 500 weeks of disability benefits to which Claimant was entitled ceased on August 30, 2013. (Id. at 10, R.R. at 93a.) On August 9, 2004, Employer issued a Notice of Workers' Compensation Benefits Offset, Form LIBC-761. (2005 FOF ¶ 3, R.R. at 3a.) Therein, Employer informed Claimant that, as of August 29, 2004, it would begin taking an offset in the amount of $139.74 per week and would suspend Claimant's

---

[2] Our previous opinion on this case described the circumstances around the pension plan as follows:

> Employer was a contributing employer to the UMWA Health & Retirement Funds' 1974 Pension Plan (Plan). Prior to working for Employer, Claimant had worked approximately seventeen and a half years for other employers who were contributors to the Plan. Claimant suffered a work-related injury while working for Employer on January 31, 2002. Claimant began receiving workers' compensation benefits at the rate of $662.00 per week. Claimant applied for a multi-employer defined benefit disability pension from the Plan, which was awarded in February 2003. At that time, the Plan paid Claimant a $17,061.44 back payment. This sum constituted pension payments for the period between February 1, 2002 and the date on which the pension was awarded. After taxes, Claimant received $13,649.16 of the back payment. Claimant began receiving monthly pension payments of $1,386.37, less $200.00 for income tax and $6.00 in union dues, for a net total of $1,180.37. Claimant reported these benefits to Employer.

Consolidation Coal Co. v. Workers' Comp. Appeal Bd. (Albani), 968 A.2d 815, 817 (Pa. Cmwlth. 2009) (footnote omitted).

workers' compensation payments for 35 weeks to offset $18,485.60 in overpayments that it paid to Claimant from February 1, 2002 through August 14, 2004.  (Id.)  Claimant promptly sought review of Employer's decision by filing a Petition for Review of Compensation Benefits Offset on August 10, 2004.  (Id. at ¶ 1, R.R. at 3a.)  On September 29, 2004, the WCJ issued an interlocutory order authorizing an offset of $139.74 per week moving forward.  (Id. at ¶ 4, R.R. at 3a.)  However, the WCJ only allowed Employer to recoup $200 per week to recoup payments already made instead of suspending all benefits until the overpayment was recouped.  (Id.)

The WCJ issued his opinion on Claimant's Petition for Review of Compensation Benefits Offsets on September 29, 2005.  Therein, the WCJ concluded that as of March 11, 2003, the date Claimant received notice of Employer's intent to take an offset, and continuing into the future, Employer was entitled to offset 51.12% of the amount of its pension payments, or $139.74 per week, representing the amount Employer contributed to Claimant's pension.  (WCJ Decision, Sept. 29, 2005, Conclusions of Law (2005 COL) ¶¶ 2, 6, R.R. at 9a, 11a.)  Because Employer suspended payments for 6.3 weeks prior to the September 29, 2004 interlocutory order and recouped $200 per week for the 52 weeks since the aforementioned interlocutory order was entered, the WCJ determined Employer recouped more than its entitled credit and ordered Employer to pay Claimant $2,370.29.  (Id. at ¶ 6, R.R. at 11a.)

Both parties appealed to the Board.  While the appeal was pending, Employer sought a supersedeas, which was granted on November 8, 2005.  (WCJ Decision, Sept. 8, 2011, #2, Findings of Fact (2011 #2 FOF) ¶ 4, R.R. at 72a.)  Upon consideration of the appeal, the Board reversed on grounds that the evidence

4

submitted by Employer was incompetent. (Board Op., Dec. 21, 2006 (2006 Board Op.), R.R. at 14a-20a.) In January of 2007, Employer filed a petition for review with this Court and a petition for rehearing with the Board. (2011 #2 FOF ¶ 6, R.R. at 72a.) The Board then denied a Petition for Supersedeas filed by Employer on February 6, 2007, and this Court denied a similar petition on March 14, 2007. (Id. at ¶ 7, R.R. at 72a.) As a result of being denied a supersedeas, Employer paid Claimant $37,090.27 on May 2, 2007, "representing the pension credit that had been deducted pursuant to" the WCJ's 2005 Order. (Id. at ¶ 8, R.R. at 72a.) On March 14, 2007, the Board granted Employer's petition for rehearing, and this Court relinquished jurisdiction. (Id. at ¶ 6, R.R. at 72a.) The Board then affirmed its previous order on rehearing on November 5, 2007. (Id. at ¶ 9, R.R. at 72a.) Employer appealed to this Court. While the appeal was pending, Employer petitioned the Board for a supersedeas, which was denied on January 3, 2008. (Id. at ¶¶ 10-11, R.R. at 72a)

On appeal, we reversed, concluding that the testimony at issue was competent. Consolidation Coal Co. v. Workers' Comp. Appeal Bd. (Albani), 968 A.2d 815, 822 (Pa. Cmwlth. 2009). We then remanded the matter to the Board so that it could address the remaining issues raised on appeal and, most notably, Employer's arguments regarding the extent and timing of the offset. Id. Claimant petitioned the Pennsylvania Supreme Court for allowance of appeal, which was denied on July 23, 2010. Consolidation Coal Co. v. Workers' Comp. Appeal Bd. (Albani), 998 A.2d 961 (Pa. 2010).

In light of the Supreme Court's decision to deny the petition for allowance of appeal, Employer sent Claimant a letter on July 30, 2010, notifying Claimant that it was immediately stopping Claimant's workers' compensation benefits

5

pursuant to the WCJ's September 29, 2005 Order. (2011 #2 FOF ¶ 14, R.R. at 73a.) Claimant responded by filing a Penalty Petition on August 11, 2010, alleging that Employer unilaterally suspended benefits in violation of previous orders and Section 413(b) of the Workers' Compensation Act (Act).[3] (Id. at ¶ 1, R.R. at 71a.) By interlocutory order dated December 17, 2010, and amended on December 27, 2010, the WCJ ordered Employer to commence payment to Claimant of $226.85 per week in workers' compensation benefits from December 17, 2010 through August 30, 2013, pending resolution of the Penalty Petition. (Id. at ¶ 15, R.R. at 73a; Interlocutory Order, Dec. 27, 2010, C.R. at Item 6.)

The Board issued an opinion and order addressing this Court's remand order on February 25, 2011. Therein, the Board rejected an argument by Claimant that Employer was barred from receiving an offset prior to August 9, 2004, due to the equitable doctrine of laches and that the offset rate was improperly calculated. (Board Op., Feb. 25, 2011, at 5-13, R.R. at 54a-62a.) The Board remanded the matter to the WCJ for additional findings and credibility determinations regarding the WCJ's determination that Employer was not entitled to retroactive credit beginning March 11, 2003 in light of new decisional law. (Id. at 7, 10, R.R. at 59a-60a.)

The WCJ circulated two decisions on September 8, 2011: the first regarding the Board's February 25, 2011 remand order; and the second regarding Claimant's Penalty Petition. With regard to the decision on remand, the WCJ made the necessary findings and concluded:

---

[3] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 774.1, added by Section 3 of the Act of February 8, 1972, P.L. 25.

6

An employer has no right to recoupment of an offset prior to the date it received the information that the claimant was receiving offset benefits. This date was on or about March 11, 2003, when [E]mployer's counsel notified [C]laimant's counsel that [E]mployer had received information that [C]laimant was now receiving a pension. Consequently, the March 11, 2003 date, is the earliest date such knowledge can be imputed to [E]mployer and is the date that the recoupment of the pension credit would commence.

(WCJ Decision, Sept. 8, 2011, #1, Conclusion of Law (2011 #1 COL) ¶ 2, R.R. at 67a (record citations omitted).) With regard to Claimant's Penalty Petition, the WCJ concluded, in relevant part, as follows:

2. The no fault overpayment made to [C]laimant in this case which resulted from the Board's reversal of [the WCJ's] Decision and Order of September 29, 2005, the denial of Supersedeas by the Board and Commonwealth Court and the reversal of the Board's Opinion and Order and reinstatement of the pension benefit offset by the Commonwealth Court is not recoverable from [C]laimant and must be recovered from the Supersedeas Fund []. See Septa v[]. W[orkers'] C[omp.] A[ppeal] B[d.] (Speca) [(Pa. Cmwlth.,] No 1359 C.D. 2008[, filed November 17,] 2009)[ ](not reported)[,] which cited Boeing Co[.] v[]. W[orkers'] C[omp.] A[ppeal] B[d.] (Horan), 977 A.2d 92 (Pa. Cmwlth[. ] 2009).

3. Employer's contest to the Penalty [P]etition was reasonable and no penalty is assessed in this case. [E]mployer did comply with the Interlocutory Orders of December 17, 2010 and December 27, 2010[,] which were to reinstate [C]laimant's workers' compensation benefit at the rate of $226.85 per week commencing December 17, 2010. The [E]mployer also complied with the Act on May 2, 2007, by paying [C]laimant and [C]laimant's counsel $37,090.27 once [E]mployer's requested Supersedeas was denied. Finally, [E]mployer had argued that the Commonwealth's [sic] Court in Horan, supra, could be distinguished from this case and while I have not adopted that argument, [E]mployer's position is not frivolous. The Undersigned would also note that while the Commonwealth Court's Decision in Speca, supra[,] was directly on point and that case cites Horan, supra[,] throughout, the Speca, [s]upra, case was not a published Decision.

7

4. Litigation costs are reasonable.

(WCJ Decision, Sept. 8, 2011, #2, Conclusions of Law (2011 COL) ¶¶ 2-4, R.R. at 73a-74a.)  Accordingly, the WCJ ordered Employer to "reimburse [C]laimant for any workers' compensation benefits withheld from [C]laimant on and after July 30, 2010 representing payments made to the [C]laimant while the Supersedeas Order issued by the Board and the Commonwealth Court were in effect."  (Order, Sept. 8, 2011, #2, R.R. at 74a.)  The WCJ then approved a 20 percent attorney fee to be paid out of the reimbursement.  (Id.)  Following the WCJ's decision, Employer petitioned the Board for supersedeas, which was granted.  (R.R. at 77a, 80a.)  Claimant's request for reconsideration of the supersedeas was denied.  (R.R. at 83a.)  Accordingly, **Employer did not reimburse Claimant for previous offsets recovered and continued to take an offset out of Claimant's workers' compensation benefits pursuant to the WCJ's interlocutory order of December 17, 2010, while the appeal was pending**.

## A. The Board's April 2, 2013 Order

In its April 2, 2013 Decision and Order, the Board addressed both September 8, 2011 WCJ orders – the order addressing Claimant's Petition for Review of Compensation Benefits Offsets on remand and the order addressing Claimant's Penalty Petition.  The Board first considered Employer's argument that the WCJ erred by not providing Employer with pension credit beginning February 1, 2002, the effective date of Claimant's pension.  Relying on Section 123.5 of the Workers' Compensation Bureau's (Bureau) regulations, 34 Pa. Code § 123.5, the Board concluded that an employer is entitled to credit for benefits already received by a claimant.  (2013 Board Op. at 6-9, R.R. at 89a-92a.)  The Board remanded the

8

matter to the WCJ to calculate the amount of credit "on Claimant's retroactive receipt of a pension covering the period commencing February 1, 2002, and continuing until March 11, 2003 . . . ." (Id. at 9, R.R. at 92a.)

Next, the Board addressed Employer's argument that the WCJ erred by concluding that Employer may not recoup overpayments directly from Claimant through offsets. The Board assessed this Court's holding in Boeing Co. v. Workers' Compensation Appeal Board (Horan), 977 A.2d 92, 104 (Pa. Cmwlth. 2009), and concluded that Horan requires Employer to recover any overpayment from the Supersedeas Fund, not directly from Claimant. (Id. at 13-14, R.R. 96a-97a.) Under the Board's reasoning, an employer may only recover credit through offsets when reimbursement from the Supersedeas Fund is not available. (Id. at 13, R.R. at 96a.)

Finally, the Board considered Claimant's argument that the WCJ erred by denying his Penalty Petition and concluding that Employer presented a reasonable contest. The Board concluded that because Employer "totally suspended compensation in an attempt to recover a retrospective overpayment of compensation resulting from the denial of supersedeas and the court's later reversal of our prior order on the case merits," Employer violated the Act, and "[c]ase law clearly supports the imposition of a penalty under these circumstances." (Id. at 15, R.R. at 98a.) The Board remanded the case to the WCJ for reconsideration of penalties and ordered that supersedeas would continue pending the WCJ's decision on remand. (Id. at 15, 17, R.R. at 98a, 100a.)

## B. The Board's July 29, 2015 Order

On remand, the WCJ made the following findings of fact.

4. [C]laimant's disability pension commenced on February 1, 2002. My earlier Decision and Order commenced the pension offset on March 12, 2003. The period from February 1, 2002 until March 11, 2003 is 57 4/7 weeks and the offset is in the amount $142.68 per week. **Consequently, there would be an additional $8,214.09 pension offset credit for this period.**

5. In its Decision and Order of April 2, 2013, the [Board] noted that [E]mployer's approach of unilaterally suspending compensation to recoup retrospective overpayment was not authorized under the Act. The Board noted that it was diametrically contrary to the proscriptions of Section 413(b)[, 77 P.S. §§ 772, 774]. [E]mployer completely suspended [C]laimant's workers' compensation benefit from July 11, 2010 through December 16, 2010. This represents 22 5/7 weeks of workers' compensation benefits and [C]laimant's workers' compensation benefit is $519.32 meaning that a total of $11,795.98 of [C]laimant's workers' compensation benefit was unlawfully suspended by [E]mployer**. An unlawful, unilateral suspension of workers' compensation benefits that has occurred in this case causes the undersigned to assess a 50% penalty on the amount of $11,795.98 for a total of $5,897.97.**

6. As noted by the [Board], no reasonable argument can be made to suggest that [E]mployer would be entitled to a complete suspension of [C]laimant's workers' compensation benefits, **consequently, [E]mployer's contest to the Penalty Petition was unreasonable.** Claimant's counsel has submitted a breakdown of his hourly work[;] however, the Undersigned would note that 8.1 hours of the requested 44.4 hours represents work performed by [C]laimant's counsel after the [Board]'s Decision of April 2, 2013. **Consequently, I find that [C]laimant's counsel has expended 36.3 hours on the Penalty Petition. Claimant's counsel has requested payment of $300 per hour. The Undersigned would note that $200 per hour is more in keeping with the request made by counsel in this area, consequently, the amount of attorney fee in this case would be 36.3 hours times $200 which would equal $7,260.00.** The Undersigned would note that the [C]laimant has already paid an attorney fee of twenty (20%) percent to [C]laimant's counsel for the period from July 11, 2010 through December 16, 2010 equal to twenty (20%) percent of [C]laimant's compensation rate of $519.32, consequently [C]laimant has already paid $2,359.12 to his counsel for

this period. Therefore, from the $7,260.00 awarded to [C]laimant's counsel, $2,359.12 must be deducted and the remaining amount of $4,900.88 paid to [C]laimant's counsel for attorney fee. The Undersigned would note that this reimbursement of attorney fee to [C]laimant would be subject to . . . any outstanding credit still ow[ed] to [E]mployer in this case.

(WCJ Decision, Jan. 7, 2014, Findings of Fact (2014 FOF) ¶¶ 4-6, R.R. at 104a (emphasis added).) In fashioning the respective recoveries, the WCJ credited the $5,897.97 penalty assessed against Employer against Employer's credit of $8,214.09, leaving Employer with $2,316.12 in credit. (WCJ Decision, Jan. 7, 2014, Conclusion of Law (2014 COL) ¶ 3, R.R. at 105a.) However, the WCJ deducted that $2,316.12 from the $2,359.12 attorney fee already paid by Claimant to his counsel, leaving Employer with no credit and Claimant with a reimbursement of $43.00. (Id. at ¶ 4, R.R. at 105a.) Finally, the WCJ ordered that Employer "pay [C]laimant's counsel $4,900.88 as attorney fee for the unreasonable contest." (Order, Jan. 7, 2014. R.R. at 106a.)

Both parties appealed the WCJ's January 7, 2014 Order to the Board, which affirmed on July 29, 2015. Employer now petitions this Court for review of the Board's Orders of April 2, 2013 and July 29, 2015, and Claimant cross-petitions for review of the Board's July 29, 2015 Order.[4] On November 4, 2015, we granted Employer's Application for Supersedeas Pending Petition for Review.

---

[4] Our review of an order of the Board is limited to "determining whether there has been a violation of constitutional rights, [whether] errors of law [were] committed, or [whether] a violation of appeal board procedures [occurred], and whether necessary findings of fact are supported by substantial evidence." Mark v. Workers' Comp. Appeal Bd. (McCurdy), 894 A.2d 229, 233 n.6 (Pa. Cmwlth. 2006).

## II. DISCUSSION

### A. EMPLOYER'S APPEAL

Employer makes two broad arguments on appeal: first, that the Board erred by not allowing Employer to recoup overpayment made to Claimant through offsetting Claimant's workers' compensation benefits; and second, that the Board erred in affirming the WCJ's decision to award penalties and unreasonable contest attorney's fees. We shall address each issue seriatim.

### 1. Supersedeas Fund Reimbursement

Employer first argues that the Board erred when it held that Employer must recoup overpayments from the Supersedeas Fund instead of offsetting Claimant's ongoing workers' compensation benefits. Employer argues that the Board failed to recognize the differences between Sections 204(a) of the Act, which addresses pension offsets, and Section 443(a) of the Act, which controls the application of the Supersedeas Fund. Employer argues that Section 204(a) of the Act was designed to prevent double recovery by a claimant and the regulations implementing Section 204(a) allows employers to take an offset for benefits an employee has already received subsequent to the date of injury by withholding workers' compensation benefits. Conversely, Section 443(a) of the Act, according to Employer, addresses reimbursement from the Supersedeas Fund and does not apply here because recovery from the Supersedeas Fund can only occur after a case has been finalized, and that reimbursing Claimant with the approximately $54,000 in workers' compensation benefits withheld provides Claimant with an unlawful double recovery since he received pension payments for the same injury.

12

Since the General Assembly enacted Act 57 in 1996, employers may offset an employee's workers' compensation benefits to the extent the employer funded an employee's pension without prior authorization from the WCJ. Section 204(a) of the Act, 77 P.S. § 71(a).[5] Section 204(a) of the Act provides, in relevant part:

> The severance benefits paid by the employer directly liable for the payment of compensation and **the benefits from a pension plan to the extent funded by the employer** directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c).[6]

77 P.S. § 71(a) (emphasis added). We have said that "Section 204(a) serves the legislative intent of reducing the cost of workers' compensation by allowing an employer to avoid paying duplicate benefits for the same loss of earnings" and "implicitly recognizes that public policy bars an employer from utilizing an employee's own retirement funds to satisfy its workers' compensation obligation." Pa. State Univ./PMA Ins. Grp. v. Workers' Comp. Appeal Bd. (Hensal), 911 A.2d 225, 227-28 (Pa. Cmwlth. 2006).

The Bureau's regulations implementing the Act address the process by which an employer may take a pension offset. Under the regulatory scheme, "employees shall report to the insurer amounts received in . . . pension benefits on form LIBC-567, 'Employee's Report of Benefits.'" 34 Pa. Code § 123.3(a). This report must occur within 30 days of the employee's receipt of benefits. 34 Pa. Code § 123.3(b). After receipt of notice from an employee, the insurer or self-

_____

[5] Added by Section 3 of the Act of June 24, 1996, P.L. 350.
[6] 77 P.S. § 513. Section 306(c) addresses the compensation schedule for specific loss injuries.

13

insured employer may offset benefits so long as notice is provided to the employee at least 20 days prior to taking the offset through Form LIBC-761, "Notice of Workers' Compensation Benefit Offset." 34 Pa. Code § 123.4(b). An "employee may challenge the offset by filing a petition to review offset with the Department." 34 Pa. Code § 123.4(e). Any offsets taken must be taken on a weekly basis and shall be "offset by the net amount an employe receives in pension benefits to the extent funded by the employer directly liable for the payment of workers' compensation." 34 Pa. Code §§ 123.8(a), 123.9(a). If an insurer or self-insured employer learns that an employee has received pension benefits subsequent to the date of injury, the insurer may be entitled to retroactive credit. 34 Pa. Code § 123.5(a). An insurer or employer shall recover the credit through an employee's future benefits by "divid[ing] by the weekly workers' compensation rate. The result shall be the number of weeks, and fraction thereof, the insurer is entitled to offset against future payments of workers' compensation benefits." 34 Pa. Code § 123.5(b).

There is no dispute as to whether Employer is entitled to credit for its payments to Claimant's pension pursuant to Section 204(a) of the Act. The question raised in this appeal by Employer is whether, under the facts of this case, Employer may unilaterally recoup overpayments made **subsequent to the initiation of litigation** directly from Claimant through offsets as outlined by Section 123.5 of the Bureau's regulations; or whether Employer **must**, as the Board concluded, recoup such overpayments from the Supersedeas Fund.

Section 443(b) of the Act[7] created the Supersedeas Fund as "a means to protect an insurer who makes compensation payments to a claimant who ultimately is determined not to be entitled thereto." Bureau of Workers' Comp. v. Workmen's Comp. Appeal Bd. (Allstate Ins. Co.), 508 A.2d 388, 390 (Pa. Cmwlth. 1986). Section 443(a) of the Act provides the circumstances by which recovery may be made from the Supersedeas Fund.[8] We have distilled Section 443(a) of the Act as allowing reimbursement from the Supersedeas Fund if:

> 1) a supersedeas was requested; 2) the request for supersedeas was denied; 3) the request was made in a proceeding under Section 413[9]

---

[7] Added by Section 3 of the Act of February 8, 1972, P.L. 25, as amended, 77 P.S. § 999(b).

[8] Section 443(a) provides:

> If, in any case in which a supersedeas has been requested and denied under the provisions of section 413 or section 430, payments of compensation are made as a result thereof and upon the final outcome of the proceedings, it is determined that such compensation was not, in fact, payable, the insurer who has made such payments shall be reimbursed therefor.

77 P.S. § 999(a), added by Section 3 of the Act of February 8, 1972, P.L. 25, as amended.

[9] 77 P.S. §§ 772, 774. Section 413 of the Act provides, in relevant part

> (a) A [WCJ] designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its [WCJ], upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. . . .
>
> (a.1) The filing of a petition to terminate, suspend or modify a notice of compensation payable or a compensation agreement or award as provided in this section shall automatically operate as a request for a supersedeas to suspend the payment of compensation fixed in the agreement or the award where the petition alleges that the employe has fully recovered and is accompanied by an affidavit of

*(Continued…)*

or Section 430[10] of the Act; 4) payments were continued because of the order denying supersedeas; and 5) in the final outcome of the proceedings, it was determined such compensation was not, in fact, payable.

Mark v. Workers' Comp. Appeal Bd. (McCurdy), 894 A.2d 229, 233 (Pa. Cmwlth. 2006) (en banc) (footnotes omitted). In order to recover from the Supersedeas Fund, an employer must apply for reimbursement to the "[D]epartment [of Labor and Industry (Department)] on forms prescribed by the [D]epartment and furnished by the insurer." 77 P.S. § 999(a). If the Supersedeas Fund denies liability, the matter is referred to a WCJ for hearing. Id.

"It has been a workers' compensation axiom . . . that where there is an overpayment of compensation, relief must be obtained not from the injured

---

a physician on a form prescribed by the department to that effect, which is based upon an examination made within twenty-one days of the filing of the petition.
. . .
(a.2) In any other case, a petition to terminate, suspend or modify a compensation agreement or other payment arrangement or award as provided in this section shall not automatically operate as a supersedeas but may be designated as a request for a supersedeas, which may then be granted at the discretion of the [WCJ] hearing the case.

Id.
[10] 77 P.S. § 991, added by Section 3 of the Act of February 8, 1972, P.L. 25. Section 430 of the Act provides:

(a) The lien of any judgment entered upon any award shall not be divested by any appeal.
(b) Any insurer or employer who terminates, decreases or refuses to make any payment provided for in the decision without filing a petition and being granted a supersedeas shall be subject to a penalty as provided in section 435, except in the case of payments terminated as provided in section 434.

Id.

employee, but from the Supersedeas Fund." David B. Torrey & Andrew E. Greenberg, Workers' Compensation in Law and Practice § 13:247 (2008). In Murphy v. Workmen's Compensation Appeal Board (Ames Department Store), 605 A.2d 1297, 1300 (Pa. Cmwlth. 1992), this Court held that "when there is an overpayment of compensation, relief **must be** obtained against the [S]upersedeas [F]und." Id. (emphasis added) (internal quotation marks omitted). In establishing the Supersedeas Fund, "[t]he legislature recognized that recoupment from the claimant was impractical and would undermine the benevolent purposes of the Act." Allstate Insur. Co., 508 A.2d at 390. **Of course, recoupment from the Supersedeas Fund can only occur for the periods in which the five requirements of Section 443(a) are satisfied.**

Here, the Board held that Employer must recover from the Supersedeas Fund by relying on our decision in Horan. The facts in Horan are as follows. A claimant sustained a work injury and was placed on light duty status until he was laid off almost 11 months later. Horan, 977 A.2d at 94. The employer denied liability and the claimant filed a claim petition after being laid off seeking temporary total disability benefits from the date of his lay off moving forward. Id. At a hearing, the claimant testified that after being laid off, he received $419.00 per week in unemployment compensation and 19 weeks of severance pay. Id. The WCJ issued a decision granting the claim petition, but did not address whether employer could offset workers' compensation benefits due to the claimant's unemployment benefits and severance pay. Id. at 94-95. On appeal to the Board, the employer argued that it was entitled to credit through an offset and requested a supersedeas. Id. at 95. The Board denied supersedeas, which resulted in the employer paying the claimant his full workers' compensation benefits. Id. The

17

Board eventually affirmed the WCJ, but modified the WCJ decision by allowing the employer to offset for the unemployment compensation and severance benefits received by the claimant. Id. The employer then filed an application for Supersedeas Fund reimbursement for $29,861.47, which was challenged by the Bureau. Id. The WCJ granted the application for Supersedeas Fund reimbursement, but the Board reversed. Id. at 95-96. Relying on our decision in City of Wilkes-Barre v. Workers' Compensation Appeal Board (Spaide), 868 A.2d 620 (Pa. Cmwlth. 2004), which held that Section 204(a) of the Act provides for a specific remedy in cases where the claimant is receiving both pension benefits funded by the employer and workers' compensation benefits, the Board held that the employer is not entitled to reimbursement from the Supersedeas Fund. Horan, 977 A.2d at 96, 100.

On appeal to this Court, we concluded that Spaide was not controlling and that the employer was entitled to reimbursement from the Supersedeas Fund. We stated:

> Spaide involved a request for supersedeas pursuant to Section 413. Unlike in Spaide,[the e]mployer here is asserting that it filed a request for supersedeas in a proceeding under Section 430 of the Act, and not Section 413. In Spaide . . . , this Court considered the issues of whether petitions filed pursuant to Section 306(f.1)(8)[11] and Section 204(a) of the Act could be equated with petitions to suspend, modify,

---

[11] 77 P.S. § 531(8). Section 306(f.1)(8) provides:

If the employe shall refuse reasonable services of health care providers, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or increase in his incapacity shown to have resulted from such refusal.

Id.

or terminate benefits filed pursuant to Section 413 of the Act. Here, however, [the e]mployer sought supersedeas under the provisions of Section 430 and it is, therefore, irrelevant that the offsets/credits sought by [the e]mployer are derived from Section 204(a), and not Section 413. Section 430 of the Act allows an employer or insurer to request a supersedeas to suspend its obligation to pay workers' compensation benefits to a claimant pursuant to an order of a WCJ or the Board while that order is being appealed to the Board or this Court. Mark, 894 A.2d at 234–35. This is precisely what [the e]mployer did in this case. [The e]mployer requested a supersedeas in connection with its appeal of the WCJ's initial decision and order granting [the c]laimant's Claim Petition. The purpose behind [the e]mployer requesting a supersedeas was to suspend [the e]mployer's recently established liability to pay [the c]laimant workers' compensation benefits pending the outcome of the appeal that it filed with the Board. Therefore, we conclude that [the e]mployer's request for supersedeas was filed in a proceeding under Section 430.

Id. at 100-01. We further distinguished Spaide by noting that unlike Spaide, the employer in Horan "contested Claimant's injury from the beginning and, thus, there were no benefits being paid from which Employer could take automatic offsets/credits pursuant to the Bureau's regulations." Id. at 101. Further, if the employer acted on its own by decreasing claimant's workers' compensation benefits in light of an order requiring it to pay such, it would have been subject to penalties. Id. Finally, we reasoned that the case was different than Spaide because unlike Spaide, "there [was] no threat of a double recovery for [the e]mployer in this case. In fact, without receiving any reimbursement from the Supersedeas Fund, [the e]mployer will not recover any amount of the offsets/credits to which it is entitled." Id. at 102. Accordingly, this Court held that Employer met the requirements for Supersedeas Fund recovery and reversed the Board's order.

Employer contends that Horan does not control this case because in Horan, the employer could not unilaterally take an offset because there were no benefits being paid at the time. Employer further argues that, unlike in Horan, under the

19

Board's approach Claimant will receive a double recovery in excess of $54,000.00, which undermines the intent of the Act.

Horan established the principle that an employer may recover from the Supersedeas Fund under Section 430 of the Act for overpayments made to a claimant pursuant to Section 204(a) of the Act. This Court applied the holding in Horan in SEPTA v. Workers' Compensation Appeal Board (Speca) (Pa Cmwlth., No. 1359 C.D. 2008, filed November 17, 2009) (Speca II).[12] In Speca II, the claimant was receiving both disability benefits and an employer sponsored pension via a voluntary retirement package. Speca II, slip. op. at 1-2. The WCJ granted the claimant disability benefits but refused to allow the employer to take a pension offset. Id. at 2. The Board affirmed and denied the employer's request for supersedeas, resulting in the employer paying the claimant a lump sum for past benefits due and continued benefit payments. Id. We reversed the Board's order, holding that an offset was appropriate under Section 204(a) of the Act. SEPTA v. Workers' Comp. Appeal Bd. (Speca), 822 A.2d 114, 120 (Pa. Cmwlth. 2003) (Speca I). Following a remand to determine the amount of offset, the WCJ determined that the employer was entitled to $210,878.29 in credit. Speca II, slip. op. at 2. The employer subsequently filed an application for Supersedeas Fund reimbursement. Id. The WCJ granted the application, but the Board reversed, holding that Supersedeas Fund reimbursement was not available because the overpayment was made pursuant to Section 204(a) of the Act. Id. We initially affirmed, but granted reconsideration based on the recently issued opinion in

---

[12] Pursuant to Section 414 of this Court's Internal Operating Procedures, an unreported panel decision issued by this Court after January 15, 2008 may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code § 69.414.

Horan. In our opinion on reconsideration, this Court held that Horan was directly controlling and that because the employer satisfied the requirements of Section 443 of the Act, it was entitled to reimbursement from the Supersedeas Fund. Id. at 8.

Unlike in Horan and Speca II, where the employers paid the claimants the full amount of their workers' compensation benefits while also contributing to a pension, Employer here originally paid Claimant the entire amount offset in a lump sum, but subsequently recommended offsets of Claimant's workers' compensation benefits pursuant to WCJ orders of December 17, 2010 and December 27, 2010.[13] Later orders of the WCJ and the Board suspending offsets were stayed when supersedeas was granted by the Board and this Court, resulting in Employer recouping $54,605.67 in overpayment. (Employer's Remand Exhibit A.) As such, Employer does not meet the fourth and fifth requirements of Section 443 of the Act – that "the payments were continued because of the order denying supersedeas; and . . . in the final outcome of the proceedings, it was determined such compensation was not, in fact, payable." Mark, 894 A.2d at 233.

Supersedeas Fund recovery is intended to protect employers or insurers that make compensation payments that are later, by virtue of administrative or judicial action, determined not to be required. Allstate Ins. Co., 508 A.2d at 390. It is not meant to be used by claimants as a tool to obtain double recovery. Because Employer has already recouped the majority of the payments to which Claimant is not entitled, and affirming the Board's order would result in double recovery, Supersedeas Fund recovery is not available. Accordingly, Employer was entitled

---

[13] Employer first began to take an offset by suspending Claimant's benefits after the Supreme Court denied Claimant's petition for allowance of appeal on the basis of the WCJ's September 29, 2005 Order. This will be discussed below. Subsequent offsets were taken by Employer pursuant to the WCJ's interlocutory order on December 17, 2010.

21

to recoup these overpayments through offsets pursuant to Section 204(a) of the Act and the associated Bureau regulations.

However, the $8,214.09 in overpayments made between February 1, 2002 and March 11, 2003 must be recovered from the Supersedeas Fund. These funds were originally recouped by Employer, but repaid to Claimant in a lump sum on May 2, 2007. The December 17, 2010 and December 27, 2010 interlocutory orders of the WCJ that authorized offsets did not include offsets for overpayments made between February 1, 2002 and March 11, 2003, because the WCJ originally held that Employer was not entitled to recoup overpayments made prior to March 11, 2003. It was not until January 8, 2014, that the WCJ concluded that Employer was entitled to a credit for this period, and that order has been stayed pending our resolution. Because these payments meet all the requirements of Section 443 of the Act, pursuant to Horan, Employer must recover these funds from the Supersedeas Fund, and not directly from Claimant.

### 2. Penalties and Attorney's Fees

Next, Employer argues that the Board erred by remanding the case for consideration of penalties and subsequently approving the penalties imposed by the WCJ. Employer contends that penalties are not warranted because it never suspended or terminated Claimant's benefits, but instead took the offsets retroactively as was authorized by the WCJ's September 29, 2005 Decision. According to Employer, it paid to Claimant $139.74 in weekly workers' compensation benefits after supersedeas was denied on January 3, 2008, and it was entitled to recoup these payments by virtue of this Court's reinstatement of the WCJ's September 29, 2005 Order. Relatedly, Employer contends that the WCJ, in

his September 8, 2011 opinion, addressed penalties and unreasonable contest fees and concluded that the contest was reasonable and that no penalties would be assessed. It is Employer's contention that the Board acted outside the bounds of the law when it remanded the matter to the WCJ because the WCJ's September 8, 2011 decision was a proper exercise of discretion and supported by substantial evidence.

### a. Penalties for Violating the Act

At issue first is the Board's decision to reverse the WCJ's September 2011 decision to not impose penalties based on its conclusion that the WCJ abused his discretion by not imposing penalties on Employer for unilaterally suspending Claimant's benefits between July 30, 2010 and December 16, 2010 without following the procedures required by the Act. Section 413(b) of the Act[14] provides:

> Any insurer who suspends, terminates or decreases payments of compensation without submitting an agreement or supplemental agreement therefor as provided in section 408[15], or a final receipt as

---

[14] Added by Section 3 of the Act of February 8, 1972, P.L. 25, as amended, 77 P.S. § 774.1.

[15] 77 P.S. § 732. Section 408 of the Act provides:

All notices of compensation payable and agreements for compensation may be modified, suspended, reinstated, or terminated at any time by an agreement or supplemental agreement as the case may be with notice to the department, if the incapacity of an injured employe has increased, decreased, recurred, or temporarily or finally terminated, or if the status of any dependent has changed.

Id.

provided in section 434[16], or without filing a petition and either alleging that the employe has returned to work at his prior or increased earnings or where the petition alleges that the employe has fully recovered and is accompanied by an affidavit of a physician on a form prescribed by the department to that effect which is based upon an examination made within twenty-one days of the filing of the petition or having requested and been granted a supersedeas as provided in this section, shall be subject to penalty as provided in section 435.

77 P.S. § 774.1.

Section 435(d)(i) of the Act[17] provides:

(d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:

(i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest

---

[16] Added by Section 6 of the Act of June 26, 1919, P.L. 642, as amended, 77 P.S. § 1001. Section 434 of the Act provides:

A final receipt, given by an employe or dependent entitled to compensation under a compensation agreement notice or award, shall be prima facie evidence of the termination of the employer's liability to pay compensation under such agreement notice or award: Provided, however, That a referee designated by the department may, at any time within two years from the date to which payments have been made, set aside a final receipt, upon petition filed with the department, or on the department's own motion, if it be shown that all disability due to the injury in fact had not terminated. Where, however, a person is receiving benefits pursuant to the act of June 28, 1935 (P.L. 477, No. 193), referred to as the Heart and Lung Act, the two-year period within which a referee may set aside a final receipt upon petition filed with the department, or upon the department's own motion, shall not begin to run until the expiration of the receipt of benefits pursuant to the Heart and Lung Act.

Id.

[17] Added by Section 3 of the Act of February 8, 1972, P.L. 25, as amended, 77 P.S. § 991(d)(i).

accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

77 P.S. § 991(d)(i). The imposition and amount of a penalty to be imposed is left to the sound discretion of the WCJ and may only be overturned on appeal for abuse of discretion. City of Phila. v. Workers' Comp. Appeal Bd. (Calderazzo), 968 A.2d 841, 850 (Pa. Cmwlth. 2009).

As a primary matter, Employer's argument that it did not violate the Act because it was authorized to stop all payments of workers' compensation to Claimant by the WCJ's September 29, 2005 order after the Supreme Court denied Claimant's petition for allowance of appeal is not correct. Prior to the September 29, 2005 order, Employer suspended Claimant's workers' compensation payments, and the WCJ issued an interlocutory order on September 29, 2004, requiring Employer to commence workers' compensation payments minus a $200 per week deduction to recoup any overpayment and minus a credit of $139.74 per week to offset current pension payments. (2005 FOF ¶ 4, R.R. at 3a.) By the time the WCJ addressed the issue a year later, Employer had already recouped the entire overpayment; and in fact, Employer recouped more than what was owed and the WCJ ordered Employer to refund the balance of $2,370.29 to Claimant. (2005 COL ¶ 6, R.R. at 11a.) While the WCJ's 2005 decision allows Employer to take a credit for future pension payments in the form of offsets from March 11, 2003 forward, the WCJ's decision does not permit Employer to suspend benefits to recoup overpayment since the matter was settled.

Further, even if Employer is correct that it did not violate the Act by recouping overpayment made since March 11, 2003 through offsets taken directly

25

from Claimant, Employer may still be subject to sanctions because "violations of the Act with respect to nonpayment of compensation exist independently of the merits of the case." Winkelmann v. Workmen's Comp. Appeal Bd. (Estate of O'Neill), 646 A.2d 58, 60 (Pa. Cmwlth. 1994). In Calderazzo, we addressed a situation where an employer ceased paying a claimant workers' compensation benefits because the employer thought suspending benefits was an appropriate means to take a pension offset under the law. Calderazzo, 968 A.2d at 851. The employer argued that it did not violate the Act because the claimant received all the money she was entitled to through the pension. Id. at 850. While we agreed that the employer was entitled to take an offset, we held that penalties were appropriate because the employer unilaterally suspended the claimant's benefits through offsetting the entire amount of benefit payments without following the proper procedures for suspending benefits. Id. at 851. Calderazzo is directly controlling here. We agree with the Board that the WCJ abused its discretion by not imposing penalties for nonpayment of benefits because after the Supreme Court denied Claimant's petition for allowance of appeal in 2007, "[Employer] should have filed a new Notice of Offset form, consistent with Sections 123.4 and 123.5 of the [Bureau's] regulations, thereby affording Claimant 20 days' notice and an opportunity to file a petition to review to challenge the adjusted offset, before undertaking a wholesale suspension of benefits by letter." (Board Op., Apr. 2, 2013, at 15, R.R. at 98a.) Accordingly, we affirm the Board's Order of April 2, 2013 insofar as it remands the matter to the WCJ to address penalties and unreasonable contest attorney's fees.

26

### b. 50 Percent Penalty

Employer next argues that the Board erred in its July 29, 2015 Order by affirming the WCJ's imposition of a 50 percent penalty when the WCJ did not make any finding of fact that Employer caused an unreasonable or excessive delay. Employer contends that it did not cause an unreasonable or excessive delay as it immediately complied with the WCJ's interlocutory order of December 17, 2010 by reinstating benefits in the amount of $226.85 per week and that its contest was reasonable.

Section 435(d)(i) of the Act provides for a penalty not exceeding 10 percent of the amount awarded and interest. 77 P.S. § 991(d)(i). The penalty may be increased to 50 percent only if the WCJ concludes that the case involved unreasonable or excessive delays. Id. Absent an abuse of discretion, this Court will not overturn a WCJ's assessment of a 50 percent penalty. City of Phila. v. Workers' Comp. Appeal Bd. (Sherlock), 934 A.2d 156, 161 (Pa. Cmwlth. 2007). "An abuse of discretion is not merely an error of judgment but occurs when the law is misapplied in reaching a conclusion." Id. The WCJ here found that Employer suspended Claimant's workers' compensation benefits illegally for 22 5/7 weeks, and the length of Employer's unlawful action led the WCJ to impose a 50 percent penalty. (2014 FOF ¶ 5, R.R. at 104a.) While the WCJ never used the words "unreasonable or excessive" in describing Employer's delay in payment, we see no abuse of discretion in the WCJ's decision to impose a 50 percent penalty.

### c. Attorney's Fees

Finally, Employer argues that the Board erred in approving the WCJ's assessment of attorney's fees for Employer's contest of Claimant's Penalty

Petition. Under Section 440(a) of the Act,[18] claimants who successfully litigate a contested case are entitled to an award of reasonable attorney's fees unless an employer presents a "reasonable basis for the contest." 77 P.S. § 996(a). The purpose of Section 440(a) is "to deter unreasonable contests by employers and to insure that a successful claimant receives compensation undiminished by necessary costs of litigation." Papernik v. Workmen's Comp. Appeal Bd., 399 A.2d 1205, 1207 (Pa. Cmwlth. 1979). The question of whether a contest is reasonable within the meaning of Section 440(a) is a question of law subject to our de novo review. Lindemuth v. Workers' Comp. Appeal Bd. (Strishock Coal Co.), 134 A.3d 111, 127-28 (Pa. Cmwlth. 2016). In some cases we suggest that "where there is a violation of the Act there cannot be a reasonable contest and an award of attorney fees is proper." Zuback v. Workers' Comp. Appeal Bd. (Paradise Valley Enter. Lumber Co.), 892 A.2d 41, 47 (Pa. Cmwlth. 2006). However, we reject that there is a *per se* rule that an employer can never present a reasonable contest when it is ultimately concluded that it violated the Act. In Bates v. Workers' Compensation

---

[18] Added by Section 3 of the Act of February 8, 1972, P.L. 25, as amended, 77 P.S. § 996(a). Section 440(a) provides:

> In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

Id.

28

Appeal Board (Titan Construction Staffing, LLC), 878 A.2d 160, 164-65 (Pa. Cmwlth. 2005), we stated:

> Each case must be decided on its own facts in order to determine whether an employer's contest of a petition asserting a violation of the Act is reasonable. Otherwise, the language in Section 440(a) of the Act that, "attorney fees may be excluded when a reasonable basis for the contest has been established by the employer" would be nullified with respect to all penalty petitions. If we adopted the rule [that any time a claimant shows a violation of the Act a contest is unreasonable], an employer . . . would always be deprived of the opportunity to explain its actions and contest the amount of the penalty sought. We conclude that this is not the law.

Id. at 165. Instead, of adopting a *per se* rule, we "look to the totality of the circumstances surrounding the contest" to determine "whether the contest was prompted to resolve a genuinely disputed issue or merely to harass the claimant." Pa. State Univ. v. Workers' Comp. Appeal Bd. (Sox), 83 A.3d 1081, 1089 (Pa. Cmwlth. 2013).

In Calderazzo the claimant sought attorney's fees for the employer's contest of both his reinstatement petition and penalty petition. We held that although the claimant was not entitled to attorney's fees related to the employer's challenge to the claimant's reinstatement petition alleging that the employer illegally took a pension offset because the offset was appropriate, the claimant was entitled to attorney's fees with regard to the employer's contest of the claimant's penalty petition because the employer did not reasonably contest that it violated the Act by unilaterally suspending benefits without following the correct procedures. Calderazzo, 968 A.2d at 852. We conclude that Calderazzo is binding precedent

29

here and affirm the WCJ's decision to award Claimant an attorney fee of $7,260. (2014 COL ¶ 4.)

### B. CLAIMANT'S APPEAL

In his Cross-Petition for Review, Claimant challenges the Board's affirmance of various conclusions made by the WCJ in his January 7, 2014 Order assessing the amount of penalties and attorney's fees. Claimant first argues that the Board erred in affirming the WCJ's decision to impose a penalty on only the benefits owed between July 10, 2010 and December 16, 2010, instead of the entire period Employer took an offset during pendency of the appeal. According to Claimant, Employer violated the Act not only by completely suspending benefits in the later part of 2010, but also by taking an offset to recoup previous overpayment when the recoupment should have come from the Supersedeas Fund.

Our disposition on Employer's appeal disposes of Claimant's first argument. Because we conclude above that Employer did not violate the Act by taking an offset pursuant to the WCJ's interlocutory orders of December 17, 2010 and December 27, 2010, no penalty is warranted for any offsets withheld after December 16, 2010. Accordingly, the WCJ's decision to not impose penalties on the funds offset by Employer during any period other than between July 10, 2010 and December 16, 2010, was not an abuse of discretion.

Next, Claimant argues that the WCJ erred by deducting the penalty assessed from the Employer's credit for overpayments made between February 1, 2002 through March 11, 2003. Claimant contends that penalties are not workers' compensation benefits and serve a different purpose, namely to assure compliance

30

with the Act. According to Claimant, deducting penalties from the overpayment is contrary to the humanitarian purposes of the Act.

In response to Claimant's argument above, the Board held:

> Instantly, [Employer] was assessed a penalty in the amount of $5,897.97 and also was awarded a pension offset credit of $8,214.09. The Judge credited the amount [Employer] owed in its penalty against the amount it was to receive from Claimant in terms of the pension offset credit. In addition, the Judge credited $2,316.12 in unreasonable contest attorney's fees to fully satisfy the entire pension offset credit Claimant owed [Employer]. While there is nothing in the Act that authorizes such a crediting of awards to each party, past precedent has allowed the use of equitable principles in workers' compensation cases under limited circumstances. See Fahringer, McCarty & Grey, Inc. v. W[orkmen's] C[omp]. A[ppeal] B[d]. (Green), 529 A.2d 56[, 59] (Pa. Cmwlth. 1987) (citing to equitable principles the court allowed a recoupment of overpaid benefits from the claimant's future benefits). Thus, we determine that the Judge under these limited circumstances appropriately used his equitable power to offset the awards and make each party whole.

(Board Op., July 29, 2015, at 8, R.R. at 121a.)

In Fahringer, we said:

> The doctrine of unjust enrichment is an equitable one; the Board, however, does not have its roots in equity. While we do not believe that this fact precludes the Board from employing certain equitable principles, **its use of such principles must be restricted in light of its statutory constraints.**

Fahringer, 529 A.2d at 59 (emphasis added). Thus, we must assess the provisions of the Act to determine whether the approach adopted by the Board is appropriate.

The purpose of Section 204(a) of the Act is to "reduc[e] the cost of workers' compensation by allowing an employer to avoid paying duplicate benefits for the same loss of earnings. Hensal, 911 A.2d at 227-28. Conversely, the purpose of

31

Section 435(d)(i) of the Act is to provide the workers' compensation authorities "with the powers and mechanisms needed to enforce the Act and to require employers to make reasonably prompt payment of compensation." Graphic Packaging, Inc. v. Workers' Comp. Appeal Bd. (Zink), 929 A.2d 695, 699 (Pa. Cmwlth. 2007) (emphasis omitted). Thus, the two provisions serve very different purposes and a claimant may receive penalties notwithstanding the ultimate decision in the case.

In Palmer v. Workers' Compensation Appeal Board (City of Philadelphia), 850 A.2d 72, 75 (Pa. Cmwlth. 2004), a WCJ awarded a claimant penalties pursuant to Section 435(d)(i) of the Act when, like here, the employer suspended benefits without following the proper procedure. The Board reversed and held that the employer should not be subject to penalties because it suspended benefits pursuant to a pension agreement, and the claimant was not entitled to the benefits withheld. Id. at 75-76. On appeal to this Court, the employer argued that Board was correct and that penalties cannot be awarded unless the claimant suffers economic harm. Id. at 76. We disagreed and reinstated the WCJ's order. We reasoned that harm is not a prerequisite for penalties, and that penalties are imposed to give the Board the power to ensure compliance with the Act. Id. at 78. Thus, Palmer establishes that the issues of penalties for suspending benefits must be seen as distinct and separate from any award of compensation. Pursuant to these principles, we conclude that the WCJ abused his authority by utilizing equitable principles to deduct the $5,897.97 in penalties awarded to Claimant from the $8,214.09 compensation credit owed to Employer. We similarly conclude that the WCJ abused his discretion by deducting $2,359.12 in attorney fees previously withheld from Claimant for the period from July 11, 2010 to December 16, 2010, from the

penalty imposed. Penalties serve a different purpose than compensation or attorney fees and must be treated as separate.

Finally, Claimant contends that the WCJ erred by reducing Claimant's counsel's hourly rate from $300 to $200, as the $300 rate was supported by substantial evidence.

Section 440(b) of the Act provides, in relevant part:

> If counsel fees are awarded and assessed against the insurer or employer, then the workers' compensation judge must make a finding as to the amount and the length of time for which such counsel fee is payable based upon the complexity of the factual and legal issues involved, the skill required, the duration of the proceedings and the time and effort required and actually expended.

77 P.S. § 996(b). Our Supreme Court has interpreted this provision as requiring the WCJ to "base the award upon the record." Ramich v. Workers' Comp. Appeal Bd. (Schatz Elec., Inc.), 770 A.2d 318, 323 (Pa. 2001). "As long as the amount and difficulty of the work performed by Claimant's attorney is *reasonably related* to the fee awarded, we will not disturb the WCJ's award." City of Phila. v. Workers' Comp. Appeal Bd. (Andrews), 948 A.2d 221, 231 (Pa. Cmwlth. 2008) (emphasis in original).

Here, counsel submitted an itemized breakdown of the hours worked and set a $300 hourly rate. (Claimant's Remand Ex. 1.) Based on a review of the amount and level of difficulty of the work reported on the itemized list, the WCJ concluded that $200 an hour was "more in keeping with the request made by counsel in this area" and awarded $7,260.00 in unreasonable contest attorney's fees. (2014 FOF ¶ 6, R.R. at 104a.) As the WCJ considered the itemized list, the only evidence presented on this issue, we have no reason to dispute that the WCJ's assessment is

33

reasonably related to the amount and difficulty of the work, and affirm the Board on this point.[19]

## III. CONCLUSION

In sum, with regard to the Board's April 2, 2013 Decision:  1) we reverse the Board's conclusion that Employer must reimburse Claimant for benefits taken as offsets and recoup the overpayment made after March 11, 2003, from the Supersedeas Fund; 2) we affirm the Board's conclusion that Employer's recoupment of the overpayment of $8,214.09 made between February 1, 2002 and March 11, 2003, must be recovered from the Supersedeas Fund; and 3) we affirm the Order insofar as it remanded the matter to the WCJ to assess penalties and unreasonable contest attorney's fees.

With regard to the Board's July 29, 2015 Order:  1) we affirm the Board's conclusion that the WCJ did not err by reducing Claimant's counsel's rate to $200 per hour; 2) we affirm the Board's conclusion that the WCJ did not err in assessing a 50 percent penalty instead of a 10 percent penalty for unilaterally suspending Claimant's workers' compensation benefits; and 3) we reverse the Board's conclusion that the WCJ acted within its equitable powers to deduct penalties and unreasonable contest attorney's fees awarded to Claimant from the credit owed to Employer.

This case has lasted over a decade, with numerous remands to the WCJ and the Board.  Because we can make the required adjustments to the WCJ's earlier

---

[19] We need not address Claimant's argument that the Board misstated the amount Employer repaid to Claimant as $54,605.67 instead of $37,090.27 because this alleged error has no impact on the substantive issues in this case.

calculations necessitated by our order, we will do so. Employer may recoup its credit of $8,213.09 as a result of pension payments made to Claimant from February 1, 2002 through March 11, 2003, from the Supersedeas Fund upon a separate petition. Employer shall pay to Claimant $5,897.97, representing a 50 percent penalty on the $11,795.98 unlawfully suspended between July 11, 2010 through December 16, 2010. Employer shall pay to Claimant $7,260.00 in unreasonable contest attorney's fees related to the Penalty Petition.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Consolidation Coal Company and :
East Coast Risk Management, :
                  Petitioners :
  :
  :
          v. :   No. 1569 C.D. 2015
  :
Workers' Compensation Appeal :
Board (Albani), :
              Respondent :
  :
Donald R. Albani, :
            Petitioner :
  :
          v. :   No. 1681 C.D. 2015
  :
Workers' Compensation Appeal :
Board (Consolidation Coal Company :
and East Coast Risk Management), :
          Respondents :


# **O R D E R**


**NOW**, September 13, 2016, the April 2, 2013 and July 29, 2015 Orders of the Workers' Compensation Appeal Board, entered in the above-captioned matter, are affirmed in part and reversed in part consistent with the foregoing opinion. Consolidation Coal Company and East Coast Risk Management shall pay to Donald R. Albani a penalty of $5,897.97 and to counsel $7,260.00 in unreasonable contest attorney's fees.

 

                              _____

                              **RENÉE COHN JUBELIRER,** Judge